UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Kyle Fellers, Anthony Foote, Nicole Foote, and Eldon Rash,<br><br>  Plaintiffs,<br><br>v.<br><br>Marcy Kelley, Michael Desilets, Matt Fisk, Bow School District, Phillip Lamy & Steve Rossetti,<br><br>  Defendants. | Case No. 1:24-cv-311-SM-AJ |

## DECLARATION OF MARCY KELLEY

I, Marcy Kelley, state as follows:

1. I am over the age of 18 and am of sound mind.

2. I am the Superintendent of Schools for SAU 67, which includes the Bow School District ("the District").

3. In the summer and early fall I was aware of the passage of House Bill 1205 concerning the participation of trans-girls in girls' sports in New Hampshire and legal challenges that had been brought against the law. I also learned that some parents of Bow students had discussed protesting the participation by a Plymouth Regional High School student at a game to be played at Bow High School on September 17, 2024.

4. The District has a policy addressing conduct on school grounds entitled "Public Conduct on School Property" ("Policy KFA"). The policy conveys that the District expects "mutual respect, civility, and orderly conduct among all individuals on school property or at a school event." It also prohibits visitors to school property from engaging in conduct that would

1

"threaten, harass, or intimidate a staff member, a School Board member, sports official or coach, or any other person" or "delay, disrupt, or otherwise interfere with any school activity." The policy forbids persons from violating other school policies or regulations or the directive of a authorized District employee and puts visitors on notice that violation of the policy could lead to being ordered to leave school grounds and the issuance of a "no trespass" order.

5. The plans discussed by the various parents at the previous game would violate the policy.

6. School administrators, including Principal Matthew Fisk, Athletic Director Michael Desilets, and I discussed the information received by Desilets and considered how to protect the visiting student from harassment. Because we did not know exactly what to expect from the parents, I also advised the local police of our concerns and asked if they could have an officer in the area. Lt. Philip Lamy later informed the school that he would come to the school for the game.

7. I was on school grounds on September 17 and was in communication with Fisk and Desilets. I was informed that some parents had worn wristbands and were told to remove them. I also was told that Kyle Fellers had been instructed to leave the field.

8. I observed Fellers move his car to a more prominent position by the roadway. There, he removed a handwritten sign from his car reading "Protect Women Sports for Female Athletes" and held it above his head. He was situated in an area where his sign would be visible to the Plymouth bus as it left the school with the Plymouth team on board. I asked Desilets to instruct Lt. Lamy that Fellers was to be told to leave school property.

9. I reviewed the overall events with Desilets and Fisk after the game.

10. I issued no trespass orders to Anthony Foote and Fellers. I based the Foote No Trespass order on the fact that he had been expressly reminded of the school policy on civility and

had nevertheless organized and participated in a protest and behavior that targeted a specific opposing player, here 15-year-old Parker Tirrell. Feller received a longer No Trespass Order – the remainder of the soccer season – because of his abuse of school administrators, his prolonged refusal to remove his wristband, his refusal to follow the directions of Lt. Lamy, and his targeting of 15-year-old Parker Tirrell both at the game and in the parking lot.

11. Foote, through counsel, notified me that he intended to challenge the No Trespass order before it expired but subsequently notified her that he would not be doing so. Fellers communicated with me several times about the impact of the No Trespass order on his ability to pick up and drop off his children and attend events. Based on those discussions, I twice amended the order to permit Fellers to attend school and activities unrelated to soccer. Neither Fellers nor Foote approached me about additional requests prior to the filing of this suit. By Foote's admission, he has been attending games since his No Trespass order expired.

12. After the September 17 game, the District designated an area by the field where those who wished to protest the administration – not players – could gather. The area was just in front of the scoreboard from which the games can be viewed. Protesters can gather there from 30 minutes before a game until 30 minutes after the game. Protesters are still obligated to follow the applicable school policies, including policy KFA. I circulated notice of the designated area to the soccer families.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on October 7, 2024         /s/ Marcy Kelley
                                    Marcy Kelley