# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KYLE FELLERS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARCEY KELLEY, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-311-SM-AJ |

### EXPEDITED MOTION TO REINSTATE THE HEARING ON MERITS

Plaintiffs move to re-combine the permanent injunction hearing with the preliminary injunction hearing scheduled for November 21-22, 2024, as originally ordered by this Court on October 8. Plaintiffs' Second Amended Complaint (Dkt. 48-1, 48-2) removes all issues triable to a jury. Even if some nominal damages questions may remain, those are not subject to a right to jury trial, and there is no good reason why this Court cannot make a final determination on injunctive relief after hearing evidence on Nov. 21-22.

1. A COMBINED HEARING IS MORE EFFICIENT AND LESS COSTLY

The Court decided at the hearing on October 8 that it wanted certain factual issues resolved through the presentation of evidence, and Plaintiffs are prepared to present both targeted live testimony and the bodycam video. This evidence will establish that Plaintiffs were engaged in a silent protest by wearing pink wristbands and that officials forced them to remove those wristbands; that Kyle Fellers was sent off for calling school officials "cowards" for failing to protect

women's sports and for comparing them to Nazis, and that Fellers immediately complied with Lt. Lamy's directive to leave "the game." The events relevant to injunctive relief almost all occurred during a short (roughly 45 minute) time period at the soccer game on September 17, 2024, and the evidence of what happened can reasonably be presented in a two-day hearing.[1] The factual development of what happened during those approximately 45 minutes on September 17 is unlikely to benefit from discovery or the passage of time. Combining the hearing on the preliminary and permanent injunctions will allow all parties and the Court to expend less resources and handle this case more efficiently. *See also* Fed. R. Civ. P. 1 (Civil rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

It may well be that there are a few outstanding issues after the Nov. 21-22 hearing, such as liability for nominal damages. But under Fed. R. Civ. P. 65(a)(2), evidence at the injunction hearing is admissible in later trial proceedings and need not be presented again. Resolving the permanent injunction now, as the Court originally intended to do, will reduce—and possibly eliminate altogether—the likelihood of a second evidentiary hearing down the road.

---

[1] That is also true of the claims and allegations in Plaintiffs' First Am. Complaint, which all arise out of the same core operative facts. Dkt. 35. That complaint added more detail about what happened on or around the soccer field on September 17, because Defendants finally provided the bodycam video.

2

The central thrust of this case remains injunctive relief, but Plaintiffs also have valid reasons for asserting nominal damages and such claims serve an important role in civil rights litigation, where past harm cannot be easily quantified in economic terms. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (discussing the role of nominal damages in a First Amendment case). Nominal damages are distinct from forward-looking injunctive relief, because they compensate victims for harms that have already occurred; in this case, actual censorship and ongoing self-censorship. *Id.* at 292 ("Because nominal damages were available at common law in analogous circumstances, we conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right.") (cleaned up); *see also Child.'s Health Def., Inc. v. Rutgers*, 93 F.4th 66, 83 (3d Cir. 2024) (nominal damages can be available even where injunctive relief is not).

2. PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF ARE NOT MOOT

In its recent order (Dkt. 47 at 2), this Court asked the parties to address the question of mootness at the Nov. 21-22 hearing. Plaintiffs will address this in more detail in their trial brief, but the request for injunctive relief remains pressing because Plaintiffs have repeatedly declared their intent to wear the pink wristbands to silently protest at various Bow S.D. sporting events and extracurricular activities, not just girls' soccer. Dkt. 14-3, ¶¶ 2, 52, 55-57; Dkt. 14-4, ¶¶ 56-57. Dkt. 14-5, ¶¶ 23-24; Dkt. 14-6, ¶¶ 1, 16.

Importantly, the Bow S.D. Defendants have not disavowed enforcement of their speech restrictions—*which apply at all Bow S.D. sporting events and extracurriculars,* not just soccer games—and continue to aggressively defend their alleged legality. Hrg. Tr., Dkt. 24, at 39-40, 47-49, 54-56. As a result, Plaintiffs continue to self-censor or face the threat of future no-trespass orders or other sanctions.

Under these circumstances, Defendants are unable to meet their burden of proving that Plaintiffs' request for an injunction is moot. "The burden of establishing mootness rests with the party urging dismissal." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 88 (2008). "This burden is a heavy one." *Id.; see also FBI v. Fikre*, No. 22-1178, 2024 U.S. LEXIS 1379, at *12 (Mar. 19, 2024) (describing "formidable burden" of proving mootness). It requires proving that it is "impossible for the [court] to provide effective relief." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 48 (1st Cir. 2006). For an injunction, that means asking whether "intervening events have eliminated any reasonable anticipation that the aggrieved party will, in the future, be faced with a recurrence of the alleged harm." *Id.* at 49.

Although the fall soccer season has ended, Plaintiffs intend to continue wearing their wristbands at other school extracurricular events—such as swim meets and cross country meets—during this school year and in future school years. *See* Dkt. 14-3, ¶¶ 2, 52, 55-57; Dkt. 14-4, ¶¶ 56-57. Dkt. 14-5, ¶¶ 23-24; Dkt. 14-6, ¶¶ 1, 16. But the District's policy forbids doing so. As Defendant Kelley explained, wearing pink wristbands to protest biological boys playing girls' sports "violate[s] the

4

[District's] policy" governing civility on school property. Dkt. 22-4, ¶¶ 4-5. And the District's newly established "designated protest area" policy restricts *all* "free speech exercises" for *all* "campus visitors" to a limited location and time period. Dkt. 14-18. Plaintiffs will thus "be faced with a recurrence of the alleged harm" if they wear their wristbands to other school activities this year (and in future years). *Goodwin*, 436 F.3d at 49. They continue to need an injunction to stop Bow School District from continuing to violate their First Amendment rights.

Here the state actors have not withdrawn their speech restrictions and claim the right to impose future sanctions if the Plaintiffs attempt to exercise their First Amendment rights. Defendants continue to irreparably harm Plaintiffs at every Bow S.D. event where the Plaintiffs are forbidden from silently protesting. As a result, this controversy remains very much alive.

3. THERE IS NO RIGHT TO A JURY TRIAL FOR NOMINAL DAMAGES UNDER $20

Plaintiffs are aware that Defendants have asserted their right to a jury trial for Plaintiffs' original claims for damages, and do not dispute the importance of those rights. The Bow S.D. Defendants belatedly objected to a combined hearing because, according to them, there are factual disputes that a jury must decide before the Court can enter equitable relief. Dkt. 46 at 2-3. Plaintiffs, however, have filed an assented-to motion to amend their complaint (Dkt. 48) to eliminate their request for compensatory damages and lower their request for nominal damages to one dollar for each plaintiff, below the Seventh Amendment's twenty-dollar threshold for a right to jury trial—something they had already offered to do in return for keeping

5

the hearing on the merits. Thus, Plaintiffs' claims no longer entitle the parties to a jury under the Seventh Amendment, and the Court can resolve the permanent injunction as it originally intended to do.

At the October 8 hearing on Plaintiffs' motion for a temporary restraining order, the Court decided to "combine the permanent injunction hearing with the preliminary injunction hearing." Hrg. Tr., Dkt. 24, at 64. No party objected. The Court then scheduled that hearing for November 21-22, 2024.

On October 25, Defendants raised the possibility that this case "*may* require a jury trial before a final hearing on the permanent injunction request is held." *See* Dkt. 36 at 2, ¶ 4 (emphasis added). Less than one week later, on October 31, Plaintiffs reached out to Defendants with an offer to drop the compensatory damages claim and reduce the request for nominal damages to eliminate all jury triable issues, in return for maintaining the hearing on the merits of injunctive relief as originally scheduled.

Defendants declined Plaintiffs' offer and instead filed the motion in limine regarding jury rights, even though Plaintiffs had offered to withdraw the only claims that trigger the Seventh Amendment in return for preserving the hearing on the merits. Unfortunately, Defendants' motion did not inform the Court that Plaintiffs had already offered to dismiss all jury-triable claims, so the Court had incomplete information when it severed the hearings two days later, before the benefit of Plaintiffs' response. *See* Dkt. 47.

In severing the hearings, the Court explained that "[f]actual determinations necessary to support a permanent injunction would undermine defendants' jury trial right." *Id.* at 2. Following that order, Plaintiffs then filed an unopposed motion to amend their complaint and withdraw their claim for compensatory damages and reduce their nominal-damages claim to one dollar for each plaintiff, for a total of no more than four dollars. Dkt. 48.

The Seventh Amendment guarantees the right to a jury trial for all "[s]uits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend VII. "Suits at common law" means "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (emphasis and quotation marks omitted). So whether this Court can decide the permanent injunction without a jury trial depends only on whether Plaintiffs are seeking legal—as opposed to equitable—relief in an amount exceeding $20.

Plaintiffs' unopposed motion to amend their complaint to dismiss the compensatory damages and reduce any nominal damage request to only one dollar per plaintiff resolves this issue. The only remaining claims are for injunctive relief and nominal damages under $20. No claim entitles Defendants to a jury.

"It is well established that 'there is no right to a jury trial . . . on a claim purely for injunctive relief . . . .'" *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir. 1989) (quoting *Rodriguez v. Munoz*, 808 F.3d 138, 142-43 (1st Cir. 1986)).

7

The same is true for any related declaratory relief which, "as an equitable remedy, is granted by the court, not the jury." *Surprenant v. Rivas*, Civil No. 02-391, 2004 U.S. Dist. LEXIS 16311, at *13 (D.N.H. Aug. 17, 2004). Defendants thus have no jury trial right on Plaintiffs' request for injunctive and declaratory relief.

Nor do they have a jury trial right on Plaintiffs' claim for nominal damages. The general rule is that "in nominal damages cases, when such damage requests are below twenty dollars, there is no right to a jury trial." *Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001). The Seventh Amendment is simply "inapplicable" in such cases "because of an insufficient amount in controversy." *Burt v. Abel*, 585 F.2d 613, 616 n.7 (4th Cir. 1978); *see also McClanahan v. Wilson*, No. 17-1720, 2019 U.S. Dist. LEXIS 128214, at *11-12 (M.D. La. July 31, 2019) (collecting cases holding the same). Some courts even consider nominal damages equitable, *see Showalter v. Allison Reed Grp., Inc.*, 767 F. Supp. 1205, 1214 (D.R.I. 1991), making the Seventh Amendment inapplicable no matter the amount. Regardless, Plaintiffs' decision to withdraw their claim for compensatory damages and reduce any nominal damages award to only one dollar for each plaintiff eliminates all jury trial issues.

The Court should thus reinstate its prior decision to hold a hearing on the permanent injunction on November 21-22, 2024.

Dated: November 8, 2024 　　　Respectfully submitted,

*/s/ Endel Kolde*　　　　　　　By:　*/s/ Richard J. Lehmann*
Endel Kolde*　　　　　　　　　　　Richard J. Lehmann
DC Bar No. 1782129　　　　　　　　New Hampshire Bar No. 9339
Brett Nolan*　　　　　　　　　　　LEHMANN MAJOR LIST, PLLC
DC Bar No. 90014964　　　　　　　6 Garvins Falls Rd,
Nathan Ristuccia*[2]　　　　　　　Concord, NH 03301
Virginia Bar No. 98372　　　　　　603.731.5435
INSTITUTE FOR FREE SPEECH　　　rick@nhlawyer.com
1150 Connecticut Avenue, N.W.
Suite 801
Washington, DC 20036
202.301.3300
dkolde@ifs.org
bnolan@ifs.org
nristuccia@ifs.org

* Pro hac vice

---

[2] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

9