UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Kyle Fellers, Anthony Foote, Nicole Foote, and Eldon Rash, <br><br> Plaintiffs, <br><br> v. <br><br> Marcy Kelley, Michael Desilets, Matt Fisk, Bow School District & Steve Rossetti, <br><br> Defendants. | Case No.  1:24-cv-311-SM-AJ |

**DEFENDANT BOW SCHOOL DISTRICT'S PREHEARING BRIEF ON PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION**

NOW COMES Defendant Bow School District ("District"), through its attorneys Cullen Collimore Shirley PLLC, and submits this Prehearing Brief to address the legal issues before the Court on Plaintiffs' Motion for Preliminary Injunction.

## INTRODUCTION

Plaintiffs arrived at a high school girls soccer game on September 17, 2024, knowing that the opposing team would be fielding a 15-year-old player who identified as a transgender girl. At least two of Plaintiffs coordinated to protest on the sidelines, at minimum by bringing signs to the field and a bag full of wristbands marked "XX" to distribute to other adults to wear at the game. One repositioned his car to display an anti-trans message to the field. When asked to remove the wristbands, three of the Plaintiffs refused. One flagrantly refused to obey a police officer who repeatedly instructed him to leave the area.

Before the Court at the November 21 hearing will be the Motion for Preliminary Injunction that Plaintiffs filed on October 4, 2024, which demanded an order allowing Plaintiffs to return to

the sidelines of the girls' varsity soccer team games with their anti-trans wristbands and signs. The urgency for this injunctive relief is now moot: The season for the girls' varsity soccer team is finished and the no trespass orders issued to Foote and Fellers have expired. No longer facing an immediate threat of irreparable harm, Plaintiffs have no genuine need for the extraordinary relief of a preliminary injunction. Nevertheless, should a hearing on preliminary injunctive relief still go forward on November 21, the District will show that barring Plaintiffs from displaying their anti-trans wristbands and signs on the sidelines of soccer games is compelled by its legal obligations and does not infringe Plaintiffs' First Amendment rights.

Finally, to the extent Plaintiffs want preliminary injunctive relief granting them broad powers to enter Bow High School for other athletic events or extracurricular activities, they have failed to develop either the factual record or the legal arguments necessary for the District to be able to respond or for the Court to rule.

## STATEMENT OF FACTS

The District incorporates herein by reference and respectfully refers to the statement of facts and supporting affidavits and exhibits in its objection to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction filed on October 7, 2024. [Doc. 22]. The District expects Plaintiffs to now minimize their actions on September 17, 2024, and portray their conduct as a display in support of their team. The Court should not be misled: In their request for relief, Plaintiffs sought an order "preliminarily and permanently" enjoining Defendants from enforcing policies to prevent Plaintiffs from "**protesting against allowing biological boys playing in girls' and women's sports**, by silently wearing a wristband on the sidelines or displaying a sign in the parking lot." [Doc. 1 at 25 (emphasis added)]. (Similarly, Plaintiffs' proposed Temporary Restraining Order ("TRO") sought relief sought to include restraining Defendants from enforcing

2

District policies to prevent attendees from "non-disruptively expressing disfavored viewpoints on political or social issues, including **protesting against allowing biological boys playing in girls' and women's sports**, by silently wearing a wristband on the sidelines or displaying a sign in the parking lot." *See* Proposed Order at 2, 3 [Doc. No. 14-1] (emphasis added)).  Thus, the Court should not countenance any after-the-fact characterization by Plaintiffs that their "XX" wristbands are purely a non-discriminatory, supportive message aimed solely at "biological females."

With respect to Plaintiffs' complaints about the "Protest Zone" the District notes that the area was set up solely to address the emergent issues at soccer games while Plaintiffs and other threatened additional protests at such games.  The area is no longer in use and has no bearing on Plaintiffs' request for injunctive relief.

## ARGUMENT

The standard of review on Plaintiffs' Motion for Preliminary Injunction is the same as they faced on their Motion for Temporary Restraining Order, requiring consideration of the following factors:

> the movant's likelihood of success on the merits; the movant's likelihood of irreparable harm in the absence of relief; the balance of equities; and whether injunctive relief is in the public interest.

*Tirrell v. Edelblut*, Case No. 24-cv-251-LM-TSM, 2024 DNH 069 (Aug. 22, 2024) ("*Tirrell* TRO Order") at 2. Like a restraining order, "[t]he grant of a preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sierra Club v. U.S. Army Corps of Eng'rs*, 997 F.3d 395, 404 (1st Cir. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis added).  Plaintiffs have already failed to obtain a TRO for the relief they are demanding, and circumstances now are even less hospitable to a preliminary injunction entering.

## I.   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION IS MOOT.

Plaintiffs filed their Motion for Preliminary Injunction on October 4, 2024, when the girls' varsity soccer team season was still ongoing, Parker Tirrell and other transgender girls were still taking the field as players, and Plaintiffs wanted to use their wristbands and signs at the remaining games. Plaintiffs argued exclusively that they were entitled to preliminary injunctive relief because they would prevail on the merits of showing that the District (i) "cannot prohibit individuals from silently wearing a pink wristband *at a soccer game* on public property to exercise their view that biological boys should not play girls' or women's sports," and (ii) cannot "prohibit individuals from displaying a sign in the parking lot *after the game* has ended." [Doc. 15 at 16, emphasis added.] Therefore, by the terms of their arguments, Plaintiffs limited the scope of preliminary injunctive relief to the issue of their conduct at girls' varsity soccer games and the parking lot after the games.

With the soccer season concluded for the academic year and the no trespass orders to Foote and Fellers expired, there is no longer a plausible argument that Plaintiffs are facing an immediate threat of irreparable harm requiring the Court rule before a trial on the merits. Although Plaintiffs have twice amended their Complaint and materially expanded their claims, it is still likely the trial on the merits will be completed well before the soccer season for the next academic year begins. Thus, Plaintiffs will have a final answer from this Court on their First Amendment claims without further alleged threats to their free speech rights at soccer games.

To be sure, in the proposed order they submitted with their Motion, Plaintiffs crafted a preliminary injunction that would sweep well beyond the soccer field and grant them the right to brandish their wristbands and signs at *any* "extracurricular event." [Doc. 14-2 at 2-3.] Yet Plaintiffs have done none of the work required for the District or the Court to be able to respond

4

to such an expansive injunction request at the November hearing.  Indeed, the broad injunction conceived by Plaintiffs' proposed order is anathema to the "more tailored approach" courts have used to ascertain the perimeter and nature of forums when evaluating free speech claims. *United Food & Commercial Workers Local 1099 v. City of Sidney*, 359 F.3d 432, 441 (6th Cir. 2004).

In *United Food*, the plaintiffs complained that their free speech rights were violated when they were prevented from soliciting petition signatures near schools that were being used as polling places. *Id*. at 436-39.  In evaluating the plaintiffs' claims, the Sixth Circuit observed that "[w]hen speakers seek general access to public property, the forum encompasses that property." *Id*. at 441. "When speakers seek more limited access, however, we must take a more tailored approach to ascertaining the perimeters of the relevant forum within the confines of the government property at issue." *Id*. (internal quotations omitted).  Under this tailored approach, the court isolated specific locations on or near the schools – such as a parking lot and a walkway leading from the parking lot to the polling place – and examined each independently to determine its nature as a public or nonpublic forum in the context of the property serving as a polling place.  359 F.3d at 442-47.

In this case, the preliminary injunction proposed by Plaintiffs is the proverbial camel's nose under the tent.  Plaintiffs have only presented arguments about their rights along the sidelines of soccer games and the adjacent parking lot. Because Plaintiffs seek only limited access to school property, the "tailored approach" to forum analysis commended by *Union Food* is triggered and only the soccer field and parking lot should be evaluated against Plaintiffs' free speech claims. Nevertheless, Plaintiffs propose a preliminary injunction that spans the full breadth of *all* school extracurricular events with no regard for when or where those events occur or whether they are public or nonpublic. Neither the District nor the Court have any concrete understanding of what other locations Plaintiffs believe they are entitled to enter or which events they think are available

5

for public access.[1] If Plaintiffs genuinely wanted a preliminary injunction granting them unfettered access to all school "extracurricular events," they needed to provide far more facts and analysis than what they presented in their Motion. The District should not be forced to carry a burden of proof about the constitutionality of its policies and actions beyond the soccer field when Plaintiffs have not bothered to explain in their Motion where else they demand to be.

Accordingly, Plaintiffs' Motion for Preliminary Injunction should be denied as moot.

## II. IF THE HEARING PROCEEDS, PLAINTIFFS SHOULD BE DENIED A PRELIMINARY INJUNCTION BECAUSE THEY ARE NOT LIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIMS.

Plaintiffs assert that they have a First Amendment right to be present at the sidelines of Bow High School girls' varsity soccer games and in the school parking lot afterward to "silently protest" biological males playing in female sports. In service of this asserted protest right, Plaintiffs demand that they be allowed to wear wristbands adorned with an "XX" symbol (presumably to indicate the biological female chromosome) and display signs that read "Protect Women's Sports for Female Athletes," perhaps among other signs.

The District does not agree that Plaintiffs have a constitutional right to engage in this kind of protest at girls' varsity soccer games, or the parking lot, and it believes its decision to enforce its policies to bar such protesting did not violate Plaintiff's First Amendment rights. As explained below, the District's policies governing public conduct on school property are reasonable in light of the pedagogical purposes served by school-sponsored athletic competition and the District's

---

[1] In their Complaint, but not their Motion for Preliminary Injunction, Plaintiffs make passing reference to a desire by Fellers to "silently protest" at swim and cross country meets as well as "other sporting events and extracurriculars". [Doc. 1 ¶ 76.] The other plaintiffs assert having similarly vague desires. [*Id*. ¶¶ 78-83.] This is as specific as Plaintiffs have been about where else, other than soccer fields, they want to be with their wristbands and signs.

legal obligation to prevent sex discrimination. Moreover, the District is enforcing its policies reasonably and without discrimination against any particular viewpoint.

### A. The District's Policies and Title IX.

The District's Policy KFA governs public conduct on school property. [Doc. 1-1.] The policy applies to any land or facilities "used for school purposes or school-sponsored events, whether public or private." *Id*. The policy states that the District "expects mutual respect, civility, and orderly conduct among all individuals on school property or at a school event." The policy further states in relevant part that no person on school property or at a school event shall: "1. Injure, threaten, harass, or intimidate a staff member, a School Board member, sports official or coach, or any other person …; 4. Violate any Federal or New Hampshire law …; [or] 10. Violate other District policies or regulations, or an authorized District employee's directive." *Id*. The policy concludes with stating that "[a]ny person who violates this policy or any other acceptable standard of behavior may be ordered to leave the school grounds" and the District "reserves the right to issue 'no trespass' letters to any person whose conduct violates this policy, acceptable standards of conduct, or creates a disruption to the School District's educational purpose." *Id*.

Overlapping Policy KFA is the Bow High School Athletics Handbook. [Doc. 1-3.] It announces the District's "expectation of every fan to maintain a positive attitude, to treat players, coaches and officials with respect, and to cheer for their teams as opposed to cheering against the other team." *Id*. It also states that "[f]ans are not to use the names or numbers of opposing teams, nor should they be trying to directly communicate or distract other players." *Id*.

Importantly, the District's Policy KFA and the Bow High School Athletics Handbook exist against the backdrop of Title IX of the Education Amendments of 1972. Title IX prohibits discrimination on the basis of sex in any education program or activity receiving Federal financial

7

assistance. Under the amended Title IX federal regulation that became effective on August 1, 2024, discrimination on the basis of sex "includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 34 CFR § 106.10. As an institution that receives Federal financial assistance, Bow High School is required to comply with Title IX.[2]

### B. The Bow High School soccer field and parking lot as forums for speech.

Plaintiffs do not demand access to the entirety of the property that comprises Bow High School. Rather, they only demand access to protest at the sidelines of the girls' varsity soccer games and the adjacent parking lot. Because Plaintiffs are seeking only limited access to a portion of school property, under *United Food*, the parties and Court must take a more tailored approach to ascertain the perimeter and nature of the forums at issue. 359 F.3d 432, 441.

Although courts have recognized four different forum types for First Amendment purposes, only two are relevant to the analysis here: limited public forums and nonpublic forums. *McBreairty v. School Board of RSU 22*, 616 F.Supp. 3d 79, 90-91 (D. Me. 2002). A limited public forum is public property where the use is limited to certain groups or dedicated solely to the discussion of certain subjects. *Id*. at 91. In limited public forums, the state may restrict expression so long as the restriction (a) does not discriminate against speech on the basis of viewpoint and (b) is reasonable in light of the purpose served by the forum. *Id*. A nonpublic forum, in turn, consists

---

[2] On November 14, 2024, the District approved Policy ACAC, which sets forth its revised Title IX policy and grievance procedure following adoption of the amended Title IX federal regulation. Under Policy ACAC, "no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any academic, co-curricular, extra-curricular, research, occupational training, or other education program or activity operated by the Bow School District." The policy further states that "[v]olunteers and visitors who engage in sex discrimination will be directed to leave the property and/or be reported to law enforcement and/or the NH Division of Children, Youth and Families (DCYF), as appropriate."

of government-owned property that is not traditionally open for public communication. *Id*. Like the limited public forum, in nonpublic forums the government can restrict speech as long as the restrictions are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id*. (internal quotations omitted).

Schools are generally deemed nonpublic forums. "The public schools do not possess all of the attributes of streets, parks, and other traditional public forums that time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (internal quotations omitted). "Hence, school facilities may be deemed to be public forums only if school authorities have 'by policy or practice' opened those facilities 'for indiscriminate use by the general public' or by some segment of the public, such as student organizations." *Id*. (internal quotations and citations omitted). "If the facilities have instead been reserved for other intended purposes, 'communicative or otherwise,' then no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." *Id*. "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Id*.

Moreover, "[i]n the context of the special characteristics of the school environment, … the government [has the power] to prohibit … actions which materially and substantially disrupt the work and discipline of the school." *Healy v. James*, 408 U.S. 169, 189 (1972). "Associational activities need not be tolerated where they infringe upon reasonable campus rules, interrupt classes, or substantially interfere with the opportunity of other students to obtain an education." *Id*.

Neither the First Circuit nor the Supreme Court has yet addressed how high school soccer games, or school-sponsored sporting events more generally, should be classified as a forum for evaluating speech claims. To be sure, the Second Circuit has determined that a school basketball game is a limited public forum. *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017). Even there, however, the court recognized that an invitation to parents and other spectators to attend basketball games "would not constitute an invitation to anyone to disrupt the game or intermissions with speeches about his or her views on school policy generally, or political issues, or other subjects not related to the sporting event …" *Id*. Yet the court did not substantively address countervailing reasons for why school-sponsored sporting events are more appropriately viewed as nonpublic forums. It did not wrestle with the compelling interest schools have in protecting the rights of students to be secure and to be let alone, *Tinker v. Des Moines Ind. Comm. Sch. Dist.*, 393 U.S. 503 (1969), nor did it explain why spectators cheering for players and teams should count as "public discourse" substantial enough to alter the general view that school-sponsored activities and school property are nonpublic forums, *Hazelwood*, 484 U.S. at 267. The *Johnson* court also could not take account of the specific issue of transgender rights and girls' sports that exploded onto the scene for New Hampshire schools this fall, and how schools needed to respond. Ultimately, the factors the *Johnson* court did not consider tilt the analysis in favor of a finding that the Bow soccer field was a nonpublic forum.

In any event, even if the Court adopts the reasoning in *Johnson* to find the soccer field is a limited public forum during girls' varsity soccer games, there is no evidence the District opened its parking lot for any purpose other than parking. Plaintiffs point to the fact that the parking lot is regularly occupied by vehicles with bumper stickers expressing views on social and political issues. At most, such evidence merely shows the District's inaction, which is insufficient evidence

10

of intentional conduct to open the parking lot as a public forum. *Healy*, 408 U.S. at 109 (public forum not created by inaction or limited discourse, but only by intentionally opening a traditional forum for public discourse).

Ultimately, it matters little whether the soccer field and parking lot are limited public forums or nonpublic forums because the District's decision to bar Plaintiffs from using their wristbands and signs is permissible under either forum analysis.

### C. The District is not infringing Plaintiffs' First Amendment rights.

Even assuming the soccer field and adjacent parking lot are limited public forums during the Bow High School girls' varsity soccer games, Plaintiffs are not suffering a deprivation of their free speech rights because the policies and law the District is enforcing are viewpoint neutral and reasonable.

The policies are viewpoint neutral because they restrict all conduct on school grounds to the extent the conduct is aimed at intimidating or harassing others or is intended to distract opposing team players. The District is also obligated under Title IX to protect students against sex discrimination, which under current regulation includes discrimination on the basis of a student's gender identity. 34 CFR § 106.10. Antidiscrimination laws, while perhaps causing "viewpoint disparity," are generally considered viewpoint neutral. *Wandering Dago, Inc. v. Desisto*, 879 F.3d. 20, 32 (2d Cir. 2018); *see also Bd. Of Dirs. Of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987) and *Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 93 (2d Cir. 2003).

The policies are reasonable given the compelling interest public schools have in protecting students and the educational setting. This interest is not merely to prevent distractions or incivility during games, such as by fans targeting opposing team players. Rather, it extends to protecting

11

the rights of students to be left alone and not subjected to intimidation or humiliation on the basis of their sex or gender identity.

Thus, the District's actions at the September 17 soccer game and subsequent no trespass orders to Foote and Fellers were justified and constitutionally permissible. The "XX" wristbands are no different and send the same message as LM's "two gender" t-shirt. *L.M. v. Town of Middleborough*, 103 F.4th 854 (1st Cir. 2024). If the t-shirt can be banned from the school grounds, certainly the XX wristbands (and "NAD" wristbands) can be. The fact that it is parents and spectators – invitees to the property, not students compelled to be in school – who are being regulated only gives more weight to the District's actions.

Moreover, although Plaintiffs cast their conduct at the September 17 game as "silent protest," the District reasonably viewed it as harassment and intimidation aimed at 15 year old Parker Tirrell. The District was on alert for Plaintiffs to become actively disruptive during the game, having earlier heard that Plaintiffs were mulling plans to dress in women's clothes, wave signs, and heckle from the sidelines. Indeed, on the morning of the September 17 game, Foote stressed to Mike Desiltes that "[t]his isn't just another game – not by a long shot." [Doc. 22-2.] With this Court declaring only days earlier that Parker Tirrell was entitled as a matter of constitutional right to play on the Plymouth girls varsity soccer team, the District interceded with Plaintiffs at the September 17 game before their conduct grew more threatening or the circumstances devolved into disorder.

Plaintiffs have no First Amendment claim arising from the events of the September 17 game because the District properly exercised its duty to protect Paker Tirrell from intimidation and harassment during the game, and it issued reasonable sanctions against Foote and Fellers – in the

form of No Trespass Orders – for conduct they knew violated the school's policies governing athletic events.

As for soccer games next season, there, too, Plaintiffs lack a cognizable claim for a First Amendment violation. The District is justified in treating Plaintiffs' wristbands and signs at soccer games and the parking lot as targeting the school's transgender and gender nonconforming student population generally for harassment and intimidation, irrespective of whether those students are playing on the field, attending the games as spectators, or present at the games at all. This is no different than the determination in *L.M.* that "words that otherwise would not constitute 'fighting words' may be so deemed in the public-school setting because of the heightened psychological sensitivities of school children." *L.M.*, 103 F.4th at 876. The District is also entitled to deference in its finding that Plaintiffs' wristbands and signs are demeaning of transgender and gender nonconforming students, and that their message is "no less likely to strike a person at the core of his being than it would if [they] demeaned the religion, race, sex, or sexual orientation of other students." *Id*. at 879.[3]

Accordingly, Plaintiffs have no constitutional right to stand on the sidelines of girls' varsity soccer games or in the adjacent parking lot wearing "XX" wristbands or displaying signs with "Protect Women's Sports for Female Athletes" messages.

### III. PLAINTIFFS HAVE NOT DEMONSTRATED A LIKELIHOOD OF IRREPARABLE HARM.

With respect to the issue of the likelihood of Plaintiffs suffering irreparable harm, the District incorporates herein by reference the arguments set forth in section I, *supra*, concerning the

---

[3]  For the sake of brevity, the District has omitted from this memorandum the analysis it submitted in prior filings about the significance of *Tinker* and other school speech cases and their bearing on the District's right to control speech that risks material disruption or impairs the rights of students. [*See* Docs. 22, 28.] The District does not waive those arguments, and it reserves the right to return to them in future briefing on the preliminary injunction and a trial on the merits.

mootness of Plaintiffs' preliminary injunction request. To the extent additional facts are established at the upcoming evidentiary hearing, the District reserves the right to use those facts in any further briefing on the question of Plaintiffs' likelihood of irreparable harm.

IV. **PUBLIC INTEREST DOES NOT FAVOR A PRELIMINARY INJUNCTION, SO THE BALANCE OF EQUITIES DO NOT FAVOR PLAINTIFF**.

As for the questions of public interest and balance of equities, the District incorporates herein by reference and respectfully refers to its objections to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction filed on October 7 and 18, 2024. [Docs. 22 & 28.] To the extent additional facts are established at the upcoming evidentiary hearing, the District reserves the right to use those facts in any further briefing on the question of public interest or the balance of the equities.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Preliminary Injunction.

                                        Respectfully submitted,

                                        BOW SCHOOL DISTRICT

                                        By its attorneys,

                                        CULLEN COLLIMORE SHIRLEY PLLC

Dated:  November 18, 2024            /s/ Jonathan M. Shirley
                                        Brian J.S. Cullen, NH Bar 11265
                                        Jonathan M. Shirley, NH Bar 16494
                                        37 Technology Way, Suite 3W2
                                        Nashua, NH 03060
                                        (603) 881-5500
                                        bcullen@cullencollimore.com
                                        jshirley@cullencollimore.com

## **CERTIFICATE OF SERVICE**

      I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated:  November 18, 2024            /s/ Jonathan M. Shirley
                                        Jonathan M. Shirley