UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Kyle Fellers, Anthony Foote, Nicole Foote, and Eldon Rash,<br><br>        Plaintiffs,<br><br>v.<br><br>Marcy Kelley, Michael Desilets, Matt Fisk, Bow School District, Philip Lamy & Steve Rossetti,<br><br>        Defendant. | Case No. 1:24-cv-311-SM-AJ |

## **DEFENDANT BOW SCHOOL DISTRICT'S ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

## **JURY TRIAL DEMANDED**

Defendant demands a jury trial on all claims so triable.

### INTRODUCTION

Plaintiffs' introduction is a summary of their Complaint that does not require a specific response. That said, Defendant has a very different view of this case. On or about July 19, 2024, the New Hampshire Legislature enacted HB 1205. The statute mandated that a student's "sex" would be determined by the student's "biological sex on the student's official birth certificate" and required that any student wishing to participate on a girls team in any New Hampshire middle or high school produce a birth certificate prior to their participation thereon. RSA 183 Section 41, I-3. The statute restricted participation in sports to those athletics who could produce a birth certificate demonstrating that their biological sex matched the gender of the team on which the student wished to participate. The passage of the Bill and enactment of the statute generated strong feelings both in favor and against the new law.

1

On August 16, 2024, two students impacted by the act – Parker Tirrell and Iris Turmelle – challenged the constitutionality of the act as applied to each of them in this Court.  *See Tirrell v. Edelblut, et al.*, Case No. 24-cv-251-LM (USDC-NH).  On August 22, 2024, the Court issued a temporary restraining order barring the application of the statute to the plaintiffs.  On September 10, 2024, this same Court granted plaintiffs' Motion for Preliminary Injunction enjoining the application statute as to them.  One of the students, Parker Tirrell, joined the Plymouth Regional High School girls soccer team.  Plymouth is in the same Division as Bow High School and their respective girls soccer teams were scheduled to play one another on September 17, 2024.

Not content to bring their concerns to their Legislatures, to adult school officials, or in traditional public forums, Plaintiffs herein elected to organize and/or participate in a protest at the girls soccer game in which they knew 15 year-old Parker would be a participant.  Defendant assumes that Plaintiffs did not read the Complaint filed in this Court by Parker or this Court's preliminary rulings thereon:  Had they done so they certainly would have realized that protesting in this fashion could have serious psychological and emotional impacts on the child.  Regardless of Plaintiffs' knowledge or intent, however, the Bow School District and its officials simply could not risk such harm occurring consistent with its obligations under state and federal discrimination law.   Upon learning of Plaintiffs' plans, Defendant took active steps to discourage behavior that it reasonably understood could harm Parker Tirrell and similarly situated students.  When Plaintiffs appeared at the game undeterred and insisted on going forward with their protest, Defendant took reasonable steps to insure that the Plymouth player was not exposed to harassment.

Plaintiffs had every opportunity to speak out against both the bill and this Court's rulings in the *Tirrell* case.  They have no right, however, to bring that speech to the sideline of a student soccer match with the intention or effect of harassing or otherwise harming students.

## THE PARTIES

1. Defendant admits that Kyle Fellers is a natural person and citizen of New Hampshire who resides in Bow and has done so at all times relevant to this Complaint. Defendant lacks sufficient information to admit or deny the remaining allegations of this paragraph and therefore denies same.

2. Defendant admits that Anthony Foote is a natural person and citizen of New Hampshire who resides in Bow and has done so at all times relevant to this Complaint. Defendant lacks sufficient information to admit or deny the remaining allegations of this paragraph and therefore denies same.

3. Defendant admits that Nicole Foote is a natural person and citizen of New Hampshire who resides in Bow and has done so at all times relevant to this Complaint. Defendant lacks sufficient information to admit or deny the remaining allegations of this paragraph and therefore denies same.

4. Defendant admits that Eldon Rash is a natural person and citizen of New Hampshire. Defendant lacks sufficient information to admit or deny the remaining allegations of this paragraph and therefore denies same.

5. Defendant admits the factual allegations contained in this paragraph.

6. Defendant admits the factual allegations contained in this paragraph.

7. Defendant admits the factual allegations contained in this paragraph.

8. Defendant admits the factual allegations contained in this paragraph.

9. Defendant admits the factual allegations contained in this paragraph.

## JURISDICTION AND VENUE

10. This paragraph is a statement of jurisdiction to which no response is required. Defendant does not contest jurisdiction.

11. This paragraph is a statement of venue to which no response is required. Defendant does not contest venue.

## STATEMENT OF FACTS

*Bow School District Policies on Speech at Extracurricular Events*

12. Defendant admits that the Bow School Board has a policy addressing public conduct on school property, which policy is attached to the Complaint speaks for itself.

13. Admitted.

14. Defendant admits that the policy contains the cited language.

15. Admitted that the Bow School District enforces the policy by several means including when necessary the one alleged.

16. Defendant admits that Bow High School has an Athletics Handbook that contains the cited language.

17. Admitted.

18. Admitted.

*The September 17 Soccer Game*

19. Admitted.

20. Defendant admits that Plaintiff Parker Tirrell was a member of the Plymouth Regional High School girls' varsity soccer team at all times relevant hereto. Defendant further admits that the two teams were scheduled to play each other at Bow High School on September

17, 2024.  Defendant lacks sufficient information to admit or deny any remaining allegations of this paragraph and therefore denies same.

21.    Defendant admits that on or about September 13, 2024, Ms. Foote met with Mr. Desilets in person and challenged the participation of Parker in the upcoming game.  Defendant further admits that Ms. Desilets informed Ms. Foote during the discussion of the injunction issued by this Court and the School's intention to honor it.

22.    Defendant admits that on September 16, 2024, Desilets emailed soccer families to remind them about the School's status as a member of the NHIAA and the commitments incumbent with such membership including those included in this paragraph.

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Admitted.

27.    Defendant admits that Fellers and the Footes have daughters who play on the Bow High School girls soccer team.  Defendant lacks sufficient information to admit or deny the purpose behind Fellers and Mr. Foote's decision to attend the game or any agreement between them, but generally admits that the two men attended the game and wore pink wristbands adorned with handwritten messages such as " XX."

28.    Defendant lacks sufficient information to admit or deny the specific nature of the wristbands that Fellers and Foote obtained or who wrote on them, but note that Foote posted on Facebook photos of a wristband with two black "X's" on it and other wristbands with the female symbol or the letters "NAD."

29.    Admitted.

30. Defendant admits that the cited language appeared on Foote's Facebook post.

31. Admitted that the exhibit is a copy of a post that appeared on Foote's Facebook page.

32. Defendant lacks sufficient information to admit or deny whether Foote's and Fellers's daughters asked if their teammates wanted to wear such wristbands but admits that no member of the team did so.

*Events at the September 17 Soccer Game*

33. Defendant admits that the named Plaintiffs, plus Mr. Rash's wife, attended the September 17, 2024, soccer game, which occurred on the campus of Bow High School.

34. Defendant admits that no parent was seen wearing a wristband during the first half of the game. Defendant further admits that Mr. Foote handed wristbands to several other adults who attended the game. Defendant lacks sufficient information to admit or deny what Mr. Foote told them with respect to donning the wristbands or whether they requested wristbands from him. Defendant admits the remaining allegations of this paragraph, except that Fellers did hold up a sign during and after the game.

35. Defendant admits that at half time Mr. Foote went to the parking lot and put a sign featuring Riley Gaines on his Jeep's windshield which was parked prominently facing the soccer field. Defendant further admits that Foote and Fellers also wore their wristbands marked with XX symbols at the sidelines at the beginning of the second half.

36. Admitted, except that Mr. Foote's Jeep displayed the poster noted above at this time.

37. Admitted.

6

38. Defendant admits the allegations of the first three sentences of this paragraph and that Fellers refused to remove his wristband. Defendant admits that Fellers used heated words during the discussion. Defendant denies all further allegations of this paragraph.

39. Defendant denies the allegations of the first sentence of this paragraph. Defendant admits the remaining allegations of this paragraph, except that only Fellers grew heated.

40. Defendant admits that after some delay, Fellers removed his wristband.

41. Defendant lacks sufficient information to admit or deny what Rash did or did not see or whether he attended the game with Fellers, although Fellers would later tell Lt. Lamy that he was to give his former in-laws a ride home. Based on this allegation, Fellers' statement to the officer appears to have been untrue.

42. Defendant admits that Rash took the wristband from Fellers's and put it on his wrist, after which Fisk and Desilets instructed him to either leave the game or take off the wristband, which he refused to do. Defendant lacks sufficient information to admit or deny the allegations that Mr. Foote filmed some of the interaction between Fisk, Desilets, and Rash but to date no such video has been produced.

43. Defendant admits that Fellers referenced the Constitution, Germany in the 1930s and 1940s, and called Desilets a coward, among other things, after passing his wristband on to Rash. Defendant further admits that he gestured to Lt. Lamy and instructed the officer to remove Fellers, at which point Fellers left the sideline. Defendant admits that Fisk was in the general area at the time. Defendant denies all remaining allegations of this paragraph.

44. Defendant admits that Fellers left after Lt. Lamy's instruction called Lt. Lamy and school officials "nazis" as he left. Defendant admits that Fellers subsequently drove his car to a

parking lot near the game from which it could be viewed.  Defendant lacks sufficient information to admit or deny the remaining allegations of this paragraph.

45. Admitted.

46. Defendant admits that at one point Fisk made the statement alleged.  Defendant denies that it was threat.

47. Defendant admits that Rossetti stopped play and that the teams returned to the area of their benches during the stoppage, which lasted approximately 15 minutes.  Defendant admits that Rosetti announced at the sidelines that the players could hear the argument made the statements quoted in this paragraph.  Defendant denies all further allegations of this paragraph.

48. Defendant admits that after several minutes Rash, still sitting facing the pitch, took the wristband off.  Defendant further admits that Ben Forbes later walked by Rash and observed that he had done so, at which point he radioed Desilets to inform him as alleged.

49. Defendant admis that Desilets, Fisk, and Rosetti conferred on the soccer pitch after Rosetti had stopped the game.  Defendant further admits that once it was communicated to the referee that Rash had done so the referee restarted the game.  Defendant denies all further allegations of this paragraph.

50. Admitted.

51. Admitted.

52. Defendant admits that signs supportive of the LGBTQ+ community have been displayed in the high school building from time to time, including that a Progress Pride flag hung in the music room partially visible to persons in the room.

53. Admitted, although the photo does not depict the scale of the flag.

54. Admitted generally, although Plaintiffs' description of the various colors is not necessarily accurate.

55. To the extent Plaintiffs intend to allege that the Progress Pride flag has a chevron pointing to the right when hung in landscape format to indicate forward progress, admitted.

56. On information and belief, admitted.

57. On information and belief, admitted.

58. Defendant admits the allegations in the third sentence of this paragraph and further admits that the reference flag was larger than the wristbands. The remainder consists of statements of law or argument to which no response is required.

*Events in the Parking Lot after the Game*

59. Defendant lacks sufficient information to admit or deny whether Fellers actually watched the rest of the game from his car. He did, however, move his car to a more prominent position at which time he displayed a poster sporting the handwritten words as alleged in this paragraph.

60. Defendant lacks sufficient information to admit or deny precisely what Fellers observed regarding other vehicles but generally admits that cars bear bumper sticks and messages on a variety of political and social issues. Defendant denies that such bumper stickers include overtly discriminating or hateful speech.

61. Defendant lacks sufficient information to admit or deny the allegations of this paragraph, except the Defendant admits that Rosetti was not prevented from conversing with Fellers.

62. Defendant lacks sufficient information to admit or deny the allegations of this paragraph, except that Defendant admits that Desilets asked Lt. Lamy to speak with Fellers when

9

he was seen there holding a sign by the road on which the Plymouth bus would depart from the game.

63. Defendant admits that Fellers was not arrested but otherwise lacks sufficient information to admit or deny the allegations of this paragraph.

*The No Trespass Orders*

64. Admitted that Ms. Kelley's statement included the quotations provided.

65. Admitted.

66. Admitted.

67. Admitted, except that contrary to Plaintiffs' claim that the order was indefinite, the no trespass order specifically provided that the order was only in effect until September 23, 2024.

68. Admitted that the order contained the cited language.

69. Admitted that the order contained the cited language.

70. Defendant denies that the no trespass order indicated that it could be extended even if Foote obeyed the order. Otherwise, admitted.

71. Admitted.

72. Admitted that the two orders are substantially similar.

73. Admitted that the order contained the cited language.

74. Admitted that the order contained the cited language.

75. Admitted.

76. Defendant admits that the Superintendent issued an Addendum addressing concerns Fellers had raised about the impact of the order, which Addendum speaks for itself.

77. Admitted.

78. Defendant admits that the Superintendent issued a second Addendum addressing concerns Fellers had raised about the impact of the order, which Addendum speaks for itself.

79. Admitted.

80. Defendant admits that the referenced Administrators submitted Declarations in support of Defendants' Objection to Plaintiffs' Motion for Temporary Restraining Order, which Declarations speak for themselves.

81. Defendant admits that Kelley's Declaration included the statement that Fellers received a longer No Trespass Order than Foote, because, among other things, of his abuse of school administrators, his prolonged refusal to remove to wristband, his refusal to follow the directions of Lt. Lamy, and his targeting of 15 year old Parker Tirrell both at the game and in the parking lot.

82. Defendant admits that Desilets's Declaration includes the language contained in the first sentence of this paragraph, although it is merely one small part of the Declaration.

83. Defendant admits that Fisk's Declaration contains the stated language, although it is just part of a longer declaration.

*The Designated Protest Area*

84. Defendant admits that Kelley sent an email on October 1, 2024, to the girls varsity soccer parents announcing the creation of a designated protest area, which contained in part the quoted language herein and attaching a notice of designated protest area. Defendant denials all further allegations of this paragraph.

85. Denied. Further answering, there does not appear to be an Exhibit K appended to the Amended Complaint.

86. Defendant admits that the notice of the designated protest area contains the language cited in this paragraph and that the area was located near the scoreboard. Defendant denies that the distance separating the two was 50 yards. Defendant denies all further allegations inconsistent with this answer.

87. Denied. Further answering it does not appear that the Amended Complaint included as Exhibit L.

*The Immediate Impact of Defendant's Actions on Plaintiffs*

88. Defendant lacks sufficient information to admit or deny whether Mr. Foote obeyed all aspects of the no trespass order but admits that he did not attend the Homecoming Game on September 20. Defendant notes that Mr. Foote had counsel in contact with the School District and made no request for an exception to attend either the game or his youngest daughter's soccer game.

89. Defendant admits that the Footes attended the soccer game on September 24, but lacks sufficient information to admit or deny whether they wore wristbands to the game. Defendant admits that other people were protesting the game by wearing pink wristbands and generally protesting. Defendant denies that there was no disruption as the protestors were a distraction during the game.

90. Defendant admits that in connection with Breast Cancer Awareness and other events the Bow High School Varsity Girls Soccer Team wore pink warm up jerseys on the field and that pink is the same color as the wristbands. None of the jerseys had "XX" or "NAD" written on them.

91. Defendant lacks sufficient information to admit or deny whether Fellers obeyed all aspect of the Trespass Order after receiving it. Defendant lacks sufficient information to admit or deny the impact that the Order had on his ability to transport his children to or from activities.

Defendant notes, however, that each time Fellers made a request for an alteration to the No Trespass Order the District altered the Order as requested.

92. Defendant lacks sufficient information to admit or deny the allegations of ¶92.

93. Defendant admits that under the terms of the No Trespass Order Fellers was not supposed to attend the Homecoming game on September 20. Defendant lacks sufficient information to admit or deny whether he actually attended.

94. Defendant admits that Fellers' children have afternoon sports practices but lacks sufficient information to admit or deny the remaining allegations of this paragraph.

*The Continuing Impact of Defendant's Actions on Plaintiffs*

95. Defendant lacks sufficient information to admit or deny the allegations of ¶95.

96. Defendant lacks sufficient information to admit or deny the allegations of ¶96.

97. Defendant lacks sufficient information to admit or deny the allegations of ¶97.

98. Defendant lacks sufficient information to admit or deny the allegations of ¶98.

99. Defendant lacks sufficient information to admit or deny the allegations of ¶99.

100. Defendant lacks sufficient information to admit or deny the allegations of ¶100.

101. Defendant lacks sufficient information to admit or deny the allegations of ¶101.

102. Defendant lacks sufficient information to admit or deny the allegations of ¶102.

103. Defendant lacks sufficient information to admit or deny the allegations of ¶103.

104. Defendant lacks sufficient information to admit or deny the allegations of ¶104.

105. Defendant lacks sufficient information to admit or deny the allegations of ¶105.

106. Defendant lacks sufficient information to admit or deny the allegations of ¶106

107. Defendant lacks sufficient information to admit or deny the allegations of ¶107.

108. Defendant lacks sufficient information to admit or deny the allegations of ¶108.

COUNT ONE
VIEWPOINT DISCRIMINATION
AS-APPLIED CHALLENGE TO SCHOOL POLICIES
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

109. The Defendant repeats the answers set forth in paragraphs 1-108 as if fully set forth herein.

110. This paragraph is a statement of law to which no response is required.

111. This paragraph is a statement of law to which no response is required.

112. This paragraph is a statement of law to which no response is required.

113. Defendant admits that the District relied on the policies cited, although the District Defendants' action were also informed by state and federal anti-discrimination law, including but not limited to Title IX.

114. This paragraph is a statement of law to which no response is required.

115. Denied.

116. This paragraph is a statement of law to which no response is required.

117. Defendant admits that attendees are permitted to silently express non-discriminatory political viewpoints through their apparel. Defendant denies the remaining allegations of this paragraph.

118. Defendant admits that each District Defendant acted under color of law but denies all further allegations of this paragraph.

COUNT TWO
UNREASONABLE RESTRICTION
AS-APPLIED CHALLENGE TO SCHOOL POLICIES
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983

119. Defendant repeats the answers set forth in paragraphs 1-118 as if fully set forth herein.

120. This paragraph is a statement of law to which no response is required.

121. This paragraph is a statement of law to which no response is required.

122. This paragraph is a statement of law to which no response is required.

123. Denied.

COUNT THREE
CONSPIRACY TO VIOLATE FIRST AMENDMENT RIGHTS
U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1988

124. Defendant repeats the answers set forth in paragraphs 1-123 as if fully set forth herein.

125. This paragraph is a statement of law to which no response is required.

126. Defendant admits that based on the information received by the District, the District Defendants discussed their obligations to prevent harassment of 15-year old Parker Tirrell, Defendant denies the remaining allegations of this paragraph.

127. Defendant admits that Rossetti stopped the game and announced that if Mr. Rash did not remove the wristband "the games over." after Mr. Rash had complied with the urging of his fellow spectators to remove his wristband. Defendant denies all further allegations of this paragraph.

128. Defendant lacks sufficient information to admit or deny the allegations of this paragraph.

129. Defendant admits that Rossetti did not allow the game to resume until after Rash complied with his instruction to remove the wristband. Defendant denies all further allegations of this paragraph.

130. Denied.

131. Denied.

## COUNT FOUR
## FIRST AMENDMENT RETALIATION
## U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1988

132. Defendant repeats the answers set forth in paragraphs 1-131 as if fully set forth herein.

133. This paragraph is a statement of law to which no response is required.

134. Denied.

135. Defendant admits that Rash was told that he needed to remove the wristband for the game to continue. Defendant denies the remaining allegations of this paragraph.

136. Denied.

137. Denied.

138. Denied as stated.

139. Denied. Further answering, the District created the designated protest zone specially to allow persons to indicate their disagreement with the District's policy and express their views on issues related to girls sports.

140. Denied.

141. Denied.

## COUNT FIVE
## OVERBREADTH
## U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1988

142. Defendant repeats the answers set forth in paragraphs 1-141 as if fully set forth herein.

143. This paragraph is a statement of law to which no response is required.

144. Defendant denies any factual allegations contained herein.

145. Denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief can be granted as to the Defendants.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs failed to mitigate their damages.

### THIRD AFFIRMATIVE DEFENSE

Defendant is immune from liability from Plaintiffs' federal claims pursuant to Qualified Immunity and/or under *Monell v. Dept. of Social Services of New York*.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' damages, if any, are the result of the actions of the Plaintiffs and/or third parties for whom Defendant is not responsible.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs request for injunctive relief is barred by the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

Defendant acted in good faith at all times.

Defendant reserves the right to supplement the defenses as discovery continues.

Respectfully submitted,

BOW SCHOOL DISTRICT

By its attorneys,

CULLEN COLLIMORE SHIRLEY PLLC

Dated: December 2, 2024  /s/ Brian J.S. Cullen
Brian J.S. Cullen, NH Bar 11265
Jonathan M. Shirley, NH Bar 16494
37 Technology Way, Suite 3W2
Nashua, NH 03060
(603) 881-5500
bcullen@cullencollimore.com
jshirley@cullencollimore.com

**CERTIFICATE OF SERVICE**

I certify that a copy of this filing was served via the Court's ECF filing system upon counsel of record.

Dated: December 2, 2024  /s/ Brian J.S. Cullen
Brian J.S. Cullen