**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| KYLE FELLERS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARCEY KELLEY, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-311-SM-AJ |

**PLAINTIFFS' REPLY BRIEF TO DEFENDANTS' POST-HEARING BRIEF**

## REPLY ARGUMENT

"The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed."[1] Thus, the starting presumption is that the Bow School District's speech restrictions on adults at school sporting events open to the public are invalid, unless one or more legal exceptions apply.

This Court should issue a preliminary injunction because the district has failed to justify its blanket ban on "trans-exclusionary" speech.[2] Bow's ban unquestionably restricts speech, meaning that Bow bears the burden of justifying it "under the appropriate constitutional standard" —not the other way around.[3]

And although the district suggests it acted in a "viewpoint-neutral" manner, its ban is obviously viewpoint based. The district's top officials justified the ban because the "XX message" is "trans-exclusionary." Superintendent Kelley testified that the problem was the message. Nov. 22 A.M. Hrg. Tr., Dkt. 66 at 31:10-32:2,

---

[1] *R. A. V. v. St. Paul*, 505 U.S. 377, 382 (1992).

[2] Bow asserts that "the District was and is well within its rights to prohibit protests at school-sponsored student events, and to bar Plaintiffs' wearing of "XX" armbands [sic] and displays of signs in school parking lots." Dkt. 73 at 2.

[3] "In the context of a First Amendment claim, the Plaintiffs have the burden to show that the state law infringes on their First Amendment rights. If the Plaintiffs make this showing, then the State must justify its restriction on speech under the appropriate constitutional standard." *Comcast of Me./New Hampshire, Inc. v. Mills*, 435 F. Supp. 3d 228, 233 (D. Me. 2019) (cleaned up); *see also Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (plaintiff must be deemed likely to prevail on PI if the government fails to demonstrate the constitutionality of the law).

1

67:13-16. No one could reasonably claim that the district's ban is viewpoint neutral in the face of such testimony.

Bow's post-trial brief selectively labors through the details of Plaintiffs' protest on September 17. But many of those facts are undisputed; and many are also irrelevant, in light of Bow's concessions.[4] Bow concedes that: (1) it does not matter whether Plaintiffs heckle, taunt, or otherwise disrupt the sporting event (Dkt. 73 at 17); (2) it does not matter whether Plaintiffs wear their double X wristbands at a soccer game where a trans-identifying player is playing, or at a basketball game where no trans-identifying student is even attending (*id.* at 18); and (3) it allows "inclusionary" messages but prohibits "exclusionary" messages. *See, e.g.*, Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 67:13-68:22; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 29:9-18.

The only remaining question is if Bow School District has met its burden of showing that it can ban adults in a limited public forum from silently expressing a disfavored viewpoint. It cannot. There is no exception to the First Amendment's prohibition against viewpoint discrimination for speech about transgender issues.

---

[4] Plaintiffs do disagree with some of how Bow characterizes the facts of September 17. Bow, for example, leaves out that Lt. Lamy expressly allowed Fellers to stay in the parking lot to collect his family. Pl. Ex. 21 at video timestamp at 8:00-8:18. But these factual differences do not matter for Plaintiffs' forward-looking requested injunctive relief. Everyone agrees Bow would prevent Plaintiffs from wearing the XX wristband at a girls' sporting event this winter or spring.

I.  BOW SCHOOL DISTRICT CANNOT BAN ADULTS FROM SILENTLY EXPRESSING THEIR VIEWPOINT IN A LIMITED PUBLIC FORUM

Sporting events at Bow School District are a limited public forum because the school opens its property to the public and allows individuals to express messages while attending. Plaintiffs only intend to silently protest by wearing pink XX wristbands at Bow extracurricular events and perhaps to display signs in the parking lot at such events. *See, e.g.*, Nov. 21 A.M. Hrg. Tr., Dkt. 67, at 91:17-92:18; Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 34:14-35:18; 47:1-10; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 16:20-17:5. The requested relief only concerns future events open to the public. *See, e.g.*, Dkt. 60 at 3, 11; Dkt. 15 at 17, 23; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 43:9-15. Plaintiffs do not seek to attend extracurricular events closed to the public, or to block traffic in the parking lot by marching with signs. *See, e.g.,* Nov. 21 A.M. Hrg. Tr., Dkt. 65, at 35:1-18.

A. Banning "exclusionary" messages but not "inclusive" message is obvious viewpoint discrimination

Bow argues that its policies are viewpoint-neutral time, place, and manner restrictions because they allow Plaintiffs to express their beliefs through "emails or in-person meetings." *See* Dkt. 73 at 18. But Defendants do not limit people expressing a different viewpoint on the same topic to "emails or in-person meetings."

Rather, Defendants admit they allow people to wear clothing expressing "inclusionary" messages at these same events. *See, e.g.*, Nov. 22 A.M. Hrg. Tr., Dkt.

3

66, at 67:13-68:22; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 29:9-18. Defendants admit applying different rules depending on what viewpoint is expressed—the definition of viewpoint discrimination. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995); *see also Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1334 (11th Cir. 2024) ("And a restriction barring that viewpoint effectively requires 'happy-talk,' permitting a speaker to give positive or benign comments, but not negative or even challenging ones."); *Marshall,* 571 F. Supp. 3d at 422 (analyzing positive vs. negative message dichotomy as viewpoint discrimination).[5]

The viewpoint discrimination is clear from Defendants' testimony. The school prohibits any "anti-trans" messages, a category that Defendants view broadly. Superintendent Kelley defines an "anti-trans" symbol as *any* symbol expressing "opposition to players classified at birth as male participating on girls' team[s]." Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 73:23-74:7. Bow's counsel stated that the message that "transgender girls are not allowed on [girls' sports'] fields" is "exclusionary" and a "message that [school officials] don't want to have coming forward." Nov. 22

---

[5] "As Policy 903 is applied . . . *positive* and complimentary personally-directed comments supportive of Board and school employees are permitted to be expressed, but *negative,* challenging or critical personally-directed comments are prohibited. Likewise, those who express support for a decision by singling out a School Board member are welcome, but those who criticize a decision are cut-off. *This is viewpoint discrimination* . . . ." (cleaned up) (emphasis added).

4

P.M. Hrg. Tr., Dkt. 72, at 42:3-19. The policies thus ban speech "based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019).[6]

The same is true for Defendants' parking-lot rules. While Defendants claim Bow "does not allow protests of any kind on its grounds or in its parking lots," Dkt. 73 at 18, Bow officials admit they permit people to wear apparel with sociopolitical messages and display flags and bumper stickers with such messages on their cars. *See, e.g.*, Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 29:9-18; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 67:13-68:22; Dkt. 42, ¶¶ 26, 52, 60. The only difference here is Defendants do not permit the clothing, flags, or bumper stickers on school grounds when expressing a disfavored message.

> B. Bow School District cannot label pure speech as "harassment" to avoid the First Amendment

Bow's message-based approach treats the "XX" wristband as automatic "harassment" if it is displayed by an adult at a school event, regardless of who is present or whether there is evidence of any actual impediment to learning. As such, Bow's ban is not tantamount to a viewpoint-neutral antidiscrimination law aimed to prevent intimidating and harassing conduct. Defendants prohibit "pure speech,"

---

[6] A "speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Reed v. Town of Gilbert*, 576 U.S. 155, 168-69 (2015). The district's regulation is viewpoint based—not merely content based—because it allows those passively expressing "trans-inclusive" messages to attend its sporting events. Thus, the district has not declared the entire topic of transgenderism or transgender participation in sports to be off-limits, only views the district officials deem "trans-exclusionary."

5

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505 (1969), that does not qualify as harassment or intimidation.

Antidiscrimination laws such as Title IX[7] are facially viewpoint neutral because they prohibit conduct—"discriminatory membership and employment policies not because of the viewpoints such policies express, but because of the immediate harms—like the denial of concrete economic and social benefits." *Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 93 (2d Cir. 2003); *see also Wandering Dago, Inc. v. Desisto*, 879 F.3d. 20, 33 (2d Cir. 2018). Here, Defendants prohibit Plaintiffs' *message*—their viewpoint—regardless of whether it is disruptive or causes a learning loss or other concrete harm. There is no evidence that any student's access to educational opportunity was, or will be, negatively impacted by this silent expression.

Bow attempts to defend its ban by alleging that the XX message is inherently "targeting[8] . . . for harassment and intimidation," Dkt. 73 at 18, and "borders on harassment," Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 42:15-19, regardless of who is present (which Bow does not know, *id.* at 42:8-15). Bow does not show, or even

---

[7] Defendants open their argument discussing the requirements of Title IX. Dkt. 73 at 14. But as this Court noted, the First Amendment trumps Title IX and any regulation or school policy interpreting it. *See* Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 62:1-4; *cf.* Dkt. 73 at 14.

[8] Bow School District speaks of "targeting the school's transgender and gender nonconforming student population generally." Dkt. 73 at 18. But the First Circuit defines "targeting" as individualized to a person or small group. *See, e.g., Swartz v. Sylvester*, 53 F.4th 693, 700 (1st Cir. 2022); *Sugiarto v. Holder*, 586 F.3d 90, 97 (1st Cir. 2009). There is no such thing as targeting a population in general, which may not even be physically present.

6

attempt to show, that this message is detrimental to students. Nov. 21 A.M. Hrg. Tr., Dkt. 67, at 33:11-25. Such an evidence-free claim cannot satisfy the government's burden justifying its speech restriction. *See Comcast of Me./New Hampshire,* 435 F. Supp. 3d 228 at 233.

Nor does Plaintiffs' message fit any ordinary definition of intimidation or harassment. "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 347, 123 S. Ct. 1536, 1541 (2003). Nothing in Plaintiffs' silent protest can be construed as threatening violence in any way, and Defendants cannot reasonably argue otherwise.

Likewise, "[a] school district cannot avoid the strictures of the First Amendment simply by defining certain speech as . . . 'harassment.'" *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 667 (8th Cir. 2023). "There is no categorical 'harassment exception' to the First Amendment's free speech clause." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 708 (9th Cir. 2009) (citation omitted). "[W]hile there is no question that non-expressive, physically harassing *conduct* is entirely outside the ambit of the free speech clause," when harassment policies "attempt to regulate oral or written expression," they must be "qualified with a standard akin to a severe or pervasive requirement" to avoid infringing on First Amendment rights. *DeJohn v. Temple Univ.*, 537 F.3d 301, 316,

7

320 (3d Cir. 2008); *see also B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 323 n.25 (3d Cir. 2013) ("Even if *Tinker* permits school regulation of pure speech that would constitute 'harassment' under Title IX, the School District has not offered any explanation or evidence of how passively wearing [] bracelets would create such a severe and pervasive environment").

Silently wearing pink wristbands is not harassment—much less severe and pervasive—and this protest led to no disruption of the game. If not for Defendants' own actions to censor Plaintiffs' viewpoint, it is unlikely that many players or spectators at the September 17 game would even have known a protest was occurring.

    C.  Applying *Tinker* to adults in a non-public forum would make new law

Bow School District insists that *Tinker* and its progeny apply to adult speech in a limited public forum. Dkt. 73 at 15-16. But Bow does not cite any precedent supporting this claim. For good reason: no such case exists. *See McElhaney v. Williams*, 81 F.4th 550, 558 (6th Cir. 2023); Dkt. 74 at 8-13 (discussing the *Tinker* line of cases). While Defendants incorrectly argue that the rationale of these cases "has nothing to do with the identity of the speaker," Dkt. 73 at 16, the Supreme Court has said otherwise. *See, e.g.*, *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 187 (2021); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655-56 (1995). Defendants' contrary argument ignores *Tinker*'s actual rationale and transmogrifies that case into a justification for censoring any adult speech that school officials find

8

disagreeable. Upholding this speech ban would require the court to scrape together a novel and expansive theory, never previously adopted by any court. That cuts heavily against Bow meeting its burden.

II. EVEN UNDER *TINKER*, IT IS IRRATIONAL TO TREAT SILENTLY WEARING A DOUBLE X WRISTBAND AS DANGEROUS TO THE WELL-BEING OF STUDENTS

Even if the Court applies *Tinker*, it should still enjoin the policy. Bow School District cannot reasonably believe that Plaintiffs' silent protest harmed the well-being of its students. As this Court has recognized, reasonableness is judged on an objective standard that looks to understandings of a reasonable observer, not to the subjective beliefs of the parties. *See* Nov. 21 A.M. Hrg. Tr., Dkt. 67, at 33:11-25; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 46:1-6. A wristband that silently expresses a message about biological boys playing girls sports—a message Bow School District *allows* its students to express in class—is not dangerous or disruptive.[9]

Transgender students know that many Americans disagree about transgender participation in sports, which is a widely debated issue of public policy. *See, e.g.*, Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 30:22-31:10; Pl. Ex. 31 at 6. Bow School District

---

[9] Nor can Defendants reasonably claim they are preventing student self-harm by allowing only "trans-affirming" messages. There is no medical consensus that gender affirming care reduces trans-student suicide. *See* NHS England, *Independent Review of Gender Identity Services for Children and Young People (Cass Report)* (April 2024) at 187 ("In summary, the evidence does not adequately support the claim that gender affirming treatment reduces suicide risk"), https://perma.cc/JA7F-DKP8.

9

cites no evidence indicating, for instance, that transgender students are especially sensitive to the XX symbol or would react to it at all. The symbol, after all, was repeatedly displayed on public television during the Summer Olympics, Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 32:7-12, so many students have seen it already. It is objectively irrational to believe that transgender students will be harmed merely be being quietly exposed this debate again—especially because Bow already allows students to debate the same issue during school. Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 30:22-31:10.

Defendants also compare the message of the double X wristband to the shirt in *L.M.* Dkt. 73 at 17. But the message that allowing biological boys to play girls' sports increases the likelihood of injuries or deprives biological girls of roster spots, medals, and scholarships does *not* "communicate that only two gender identities—male and female—are valid, and any others are invalid or nonexistent." *L.M. v. Town of Middleborough*, 103 F.4th 854, 880 (1st Cir. 2024). It simply states that in the special context of athletics, biological differences matter. Students are not so fragile as to require protection from this message. Thus, Bow's ban is unreasonable even under *Tinker* and *L.M.*

## CONCLUSION

This Court should grant Plaintiffs' request for a preliminary injunction.

10

| | |
|---|---|
| Dated: December 16, 2024 | Respectfully submitted, |
| | |
| /s/ *Richard J. Lehmann* | /s/ *Endel Kolde* |
| Richard J. Lehmann | Endel Kolde* |
| New Hampshire Bar No. 9339 | DC Bar No. 1782129 |
| LEHMANN MAJOR LIST PLLC | Brett Nolan* |
| 6 Garvins Falls Road | DC Bar No. 90014964 |
| Concord, New Hampshire 03301 | Nathan J. Ristuccia*[10] |
| Tel: (603) 731-5435 | Virginia Bar No. 98372 |
| Fax: (720) 995-9156 | INSTITUTE FOR FREE SPEECH |
| rick@nhlawyer.com | 1150 Connecticut Ave., NW |
| | Suite 801 |
| | Washington, D.C. 20036 |
| | Tel: (202) 301-3300 |
| | Fax: (202) 301-3399 |
| | dkolde@ifs.org |
| | bnolan@ifs.org |
| | nristuccia@ifs.org |
| | |
| | *Pro hac vice |
| | |
| | Counsel for Plaintiff |

---

[10] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

11