UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KYLE FELLERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MARCY KELLEY, *et al.*, <br><br> Defendants. | Case No. 1:24-cv-311-SM-AJ |

**PLAINTIFFS' MOTION TO EXPEDITE DECISION ON
PENDING MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Bow School District prohibits adults attending extracurricular events open to the public from wearing pink wristbands with an "XX" symbol, or otherwise silently protesting against the inclusion of biological males in women's and girls' sports. Defendants have enforced this policy against Plaintiffs in the past and state that they will continue to enforce it at extracurricular events in the future, even if no transgender athlete is competing.

On October 4, 2024, Plaintiffs sought a preliminary injunction, allowing them to silently express their viewpoint on women's sports at Bow events. Plaintiffs' motion has been fully briefed since December but no ruling has been forthcoming. The fall and winter sports seasons have concluded during the pendency of this motion, and spring sports season is soon beginning. During this time, Plaintiffs have had to censor themselves when at Bow School District events to ensure that they would not get banned from school property, as they were in September, or experience other negative consequences. That irreparable harm is ongoing, and this Court has twice denied their motions for temporary relief to allow them to silently protest.

Spring sports season is the last chance for Plaintiffs to silently express their sociopolitical views at a Bow event this school year, and—because one of Plaintiffs' children is a high-school senior—the last chance to ever express their views at one child's events. Plaintiffs appreciate that this Court faces other demands for its time,

1

but additional delay jeopardizes Plaintiffs' ability to obtain relief. The start of games in the spring sports season, thus, constitutes good cause to expedite consideration of the motion.

Pursuant to Local Rule 7.1(f), Plaintiffs respectfully move for this Court to expedite consideration of the pending motion for preliminary injunction and rule on this motion by the first games of the spring sports season, on April 14, 2025. If no ruling occurs by April 14, Plaintiffs will understand this Court to have constructively denied the injunction, and pursue interlocutory appeal of that denial under 28 U.S.C § 1292(a)(1).

## STATEMENT OF FACTS

The facts of this case are well known to the Court. *See, e.g.*, Dkt. 60 at 4-11; Dkt. 15 at 7-15. Plaintiffs will only review facts relevant to this motion.

On September 17, Plaintiffs attended a varsity girls' soccer game at the Bow High School field, in which their daughters and granddaughter played. *See, e.g.*, Dkt. 14-3, ¶¶ 14-15; Dkt. 14-4, ¶¶ 23-24; Dkt. 14-5, ¶ 13. In the second half of the game, three Plaintiffs wore pink wristbands with XX on them, to silently expressly their belief that girls' and women's sports should be reserved to biological females. *See* Dkt. 14-3, ¶¶ 17, 23-24; Dkt. 14-4, ¶ 28; Dkt. 14-6, ¶¶ 4-9. They did not call attention to the wristbands or disturb the game, and most spectators—let alone, the players—would never have known that a protest was happening if not for the

2

Defendants' own actions. *See* Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 64:9-20, 66:4-13; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 8:23-9:7, 11:13-23; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 8:23-9:7, 11:13-23; Dkt. 14-3, ¶¶ 16, 18; Dkt. 14-4, ¶¶ 27, 29; Dkt. 14-6, ¶¶ 4, 6.

During the second half, Bow officials approached Plaintiffs and insisted that this silent protest violated school policies, so Plaintiffs had to either remove the wristbands or leave the game. *See, e.g.*, Dkt. 22-1, ¶¶ 12-13; Dkt. 22-6, ¶¶ 7-8. The school allows "inclusionary" messages such as the Pride Flag but not "exclusionary" messages such as Plaintiffs' pink XX wristbands, which Bow officials consider to be a "hateful" "anti-trans symbol." Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 31:10-33:1, 67:13-68:22; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 25:14-15, 31:10-18. The soccer game was stopped for approximately 10 minutes while Plaintiffs initially refused to remove the wristbands, and officials threatened to end the game permanently if Plaintiffs did not comply. *See, e.g.*, Dkt. 22-1, ¶¶ 14-15, 17; Dkt. 40, ¶ 47; Dkt. 14-4, ¶¶ 35-36; Dkt. 14-6, ¶¶ 10-12. Plaintiffs eventually gave in and removed the bands. Dkt. 14-3, ¶¶ 20-23; Dkt, 14-4, ¶¶ 30-34; Dkt. 14-6, ¶ 13.

A few days later, Plaintiffs Kyle Fellers and Andy Foote received "No Trespass Orders" prohibiting them for a time "from entering the buildings, grounds, and property of the Bow School District" including "parking lots, and athletic fields" and "from attending any Bow School District athletic or extra-curricular event, on or off school grounds." Dkt. 14-14; Dkt. 14-13. In the orders and in a public statement,

3

Bow School District Superintendent Marcy Kelley stated that Fellers' and Foote's silent protest violated Bow Policy KFA and the Bow High School Athletics Handbook. Dkt. 14-12; Dkt. 14-14; Dkt. 14-13. Policy KFA requires "mutual respect, civility, and orderly conduct among all individuals on school property or at a school event" and forbids people from "injur[ing], threaten[ing], harass[ing], or intimidat[ing] . . . any other person" or "imped[ing], delay[ing], disrupt[ing], or otherwise interfer[ing] with any school activity or function." Dkt. 14-7. Likewise, the Athletics Handbook states that "[p]oor sportsmanship in any form will not be tolerated on the field of play, on the sidelines, or in the stands." Dkt. 14-9.

Bow School District interprets these policies to forbid "any inappropriate signs, references, language or anything else" at school sporting events. Dkt. 14-8. The school considers XX wristbands or signs with messages such as "Protect Women's Sports for Female Athletes" as "targeting the school's transgender and gender nonconforming student population generally for harassment and intimidation, irrespective of whether those students are playing on the field, attending the games as spectators, or present at the games at all." Dkt. 59 at 13. At all events, attendees must either remove apparel, flags, bumper stickers, and similar symbols expressing a message Bow deems "anti-trans" or leave school grounds. *See* Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 67:13-68:17; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 28:23-30:7, 41:20-

4

42:15. No showing of specific harm to any individual student is necessary. *See* Nov. 21 A.M. Hrg. Tr., Dkt. 67, at 33:6-25, 37:2-10; Dkt. 73 at 18.

Plaintiffs wore, and have testified that they intend to wear again, pink XX wristbands as a silent protest. *See, e.g.*, Nov. 21 A.M. Hrg. Tr., Dkt. 67, at 91:17-92:18; Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 34:14-35:18; 47:1-10; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 16:20-17:5. Because of Defendants' policies, Plaintiffs were unable to silently protest in defense of girls' and women's sports at sporting events during the now-concluded winter season. *See* Dkt. 14-3, ¶¶ 2, 52, 55-56; Dkt. 14-6, ¶ 1, 16; Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 46:9-48:18. In the spring sports season, two of the Plaintiffs' children play on Bow School District teams: the high school varsity girls' lacrosse team and the middle school girls' lacrosse team respectively. *See* A. Foote 2d. Dec., ¶¶ 2-4; N. Foote 2d. Dec., ¶¶ 2-6. Plaintiffs expect that without judicial relief, any public protests at spring season games will violate Defendants' policies and put Plaintiffs in danger of arrest, game suspension, game cancellation, or renewed No Trespass orders. *See, e.g.*, A. Foote 2d. Dec., ¶¶ 4-6; N. Foote 2d. Dec., ¶¶ 10-11; Fellers 2d. Dec., ¶¶ 2-9. As a result, they are self-censoring until they can obtain legal relief, which has so far not been obtained. A. Foote 2d. Dec., ¶¶ 5-6; N. Foote 2d. Dec., ¶¶ 10-11; Fellers 2d. Dec., ¶¶ 9-10.

5

**PROCEDURAL HISTORY**

On September 30, 2024, Plaintiffs filed this lawsuit in defense of their First Amendment rights. Dkt. 1. At a hearing on October 8, this Court denied Plaintiffs' motion for a temporary restraining order against Defendants' policies restricting protests on school grounds but ordered Defendants to allow Fellers to attend soccer games if he did not protest at games, advocate his position at games, interact with coaches, or violate school rules or sportsmanship expectations. Oct. 8 Hrg. Tr., Dkt. 24, at 78:2-79:5. The Court also scheduled an evidentiary hearing on the preliminary injunction for late November, stating that the Court is "pretty flexible" on timing as it did not have "a lot going on." *Id.* at 74:9-12, 76:11-12.

After a two-day hearing on November 21 and 22, Plaintiffs renewed their request for a temporary restraining order, to allow Plaintiffs to wear wristbands at Bow School District events, pending the Court's ruling on the longer-term preliminary relief. Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 37:22-38:3. Plaintiffs testified about winter season sporting events during December 2024 and January 2025 at which they planned to silently protest, if granted protection from the Court. *See, e.g.*, Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 38:12-19; Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 34:7-25, 46:3-48:18. The Court denied this renewed request for a temporary restraining order. Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 44:24-45:2. The Court, however, stated that it would "decide [the preliminary injunction] just as soon as I

6

get briefs" and "welcome[d]" parties to file their post-hearing briefs "earlier" than the due date, if possible. *Id.* at 37:8-19, 46:12-18.

Parties completed their post-hearing briefing on December 17. *See* Dkt. 75; Dkt. 76. No decision on the injunction has yet issued. The winter sports season has now ended, and the Bow schools' spring sports season begins March 24, with games commencing April 14. N. Foote 2d. Dec, ¶¶ 7-9; Ex. R; Ex. S.

## ARGUMENT

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "[E]ach day in which Plaintiffs were prohibited from expressing constitutionally protected speech constitutes a separate irreparable harm." *Ass'n of Victims of Med. Malpractice v. Torres-Nieves*, No. 12-1812(DRD), 2013 U.S. Dist. LEXIS 205407, at *24 (D.P.R. Sep. 30, 2013). Here, Plaintiffs have been prevented from silently protesting at Bow School District extracurricular events during both the fall and winter sports seasons. Every day that passes magnifies Plaintiffs' injury. Unless they receive injunctive relief from this Court, they will not be able to express their viewpoint during the spring sports season as well, including all of one daughter's remaining games as a high-school student. *See* A. Foote 2d. Dec., ¶¶ 3-6; N. Foote 2d. Dec., ¶¶ 4-5, 10-11; Fellers 2d. Dec., ¶¶ 2-9.

7

Federal law requires that "the court shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown." 28 U.S.C. § 1657(a). Moreover, "'good cause' is shown if a right under the Constitution of the United States . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Id*. The First Circuit has "stressed the need for expedition that characterizes an injunctive proceeding." *United States v. 8,440,190.00 in U.S. Currency*, 719 F.3d 49, 65 n.17 (1st Cir. 2013) (cleaned up). Thus, the District of New Hampshire permits parties to request expedited consideration for good cause via motion. Local Rule 7.1(f).

Moreover, when a "court's action ha[s] the practical effect of denying injunctive relief" and "cause[s] serious (if not irreparable) harm," movants can have a "right to an immediate appeal" under 28 U.S.C § 1292(a)(1). *Watchtower Bible & Tract Soc'y of N.Y. v. Colombani*, 712 F.3d 6, 12 (1st Cir. 2013). Courts have repeatedly allowed such appeals when delay causes irreparable harm. *See, e.g.*, *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 532-33 (5th Cir. 2024) (permitting appeal after party "informed the court that if it did not receive a ruling by" a certain deadline, "it would understand its preliminary injunction to be effectively denied"); *Clarke v. CFTC*, 74 F.4th 627, 635 (5th Cir. 2023) (permitting appeal when court did not rule despite motion "to expedite its consideration in light of the looming

8

deadline"); *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, 538 F.3d 577, 580 (7th Cir. 2008) (noting that "a delay of a ruling [is] equivalent to a denial . . . when the passage of time causes irreparable injury to the person claiming entitlement to relief"); *Mount Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1449 (9th Cir. 1992) (finding effective denial when court delaying ruling until action to be enjoined was substantially complete).

This Court has twice denied Plaintiffs' request for a temporary restraining order to allow their silent protests, while indicating to Plaintiffs that it intended to decide about the preliminary injunction quickly. Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 37:8-19, 46:12-18; Oct. 8 Hrg. Tr., Dkt. 24, at 74:9-12, 76:11-12. However, more than two months after that preliminary injunction was fully briefed, three months after completing the evidentiary hearing, and five months after Plaintiffs first requested this relief, no decision has issued. Plaintiffs respectfully urge this Court to allow them to exercise their First Amendment rights during the coming spring sports season. Continued delay is effectively a denial of their right to speak.

Further delaying a ruling on the motion preliminary injunction also delays the potential appellate process. Because this case involves contentious questions of law, one or both sides may seek appeal of any decision on the preliminary injunction, potentially delaying Plaintiffs' relief even further. If Plaintiffs are denied relief, it is imperative that the appellate process begin soon, so that Plaintiffs have at least the

9

possibility of silently protesting at Bow sporting events during the coming school year. *See* N. Foote 2d. Dec, ¶¶ 7-9; Ex. R; Ex. S. Delaying an appeal of a preliminary injunction denial will only further magnify the harm to Plaintiffs' civil rights. As a result, delaying ruling past the start of spring season games on April 14 will effectively deny the preliminary injunction. If the Court has not ruled before April 14, Plaintiffs intend to file a notice of appeal.

## CONCLUSION

This Court should expedite its consideration of Plaintiffs' pending motion for preliminary injunction and rule on that motion by April 14, 2025.

Dated: February 26, 2025

*/s/ Richard J. Lehmann*
Richard J. Lehmann
New Hampshire Bar No. 9339
LEHMANN MAJOR LIST PLLC
6 Garvins Falls Road
Concord, New Hampshire 03301
Tel: (603) 731-5435
Fax: (720) 995-9156
rick@nhlawyer.com

Respectfully submitted,

/s/ *Endel Kolde*
Endel Kolde*
DC Bar No. 1782129
Brett Nolan*
DC Bar No. 90014964
Nathan J. Ristuccia*[1]
Virginia Bar No. 98372
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW
Suite 801
Washington, D.C. 20036
Tel: (202) 301-3300
Fax: (202) 301-3399
dkolde@ifs.org
bnolan@ifs.org
nristuccia@ifs.org

**Pro hac vice*

*Counsel for Plaintiff*

[1] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

## CERTIFICATE OF CONFERRAL

I hereby certify that, on February 20 and February 21, 2025, Plaintiffs' counsel conferred in good faith with Defendants' counsel via email about this motion, who indicated that they take no position on it.

Executed under penalty of perjury.

Dated: February 26, 2025

<div style="text-align: right;">*s/Endel Kolde*</div>