**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| KYLE FELLERS, *et al.*,<br>Plaintiffs,<br>v.<br>MARCY KELLEY, *et al.*,<br>Defendants. | Case No. 1:24-cv-311-SM-AJ |

**PLAINTIFFS' MOTION TO EXPEDITE DECISION ON PENDING MOTION FOR PRELIMINARY INJUNCTION OR INTERIM DECLARATORY RELIEF**

## INTRODUCTION

Bow School District prohibits adults attending school sports events open to the public from wearing pink wristbands with an "XX" symbol, or otherwise silently protesting against the inclusion of biological males in women's and girls' sports. Defendants have enforced this policy against Plaintiffs in the past and state that they will continue to enforce it at school sports events in the future, even if no transgender athlete is competing or otherwise present at the event.

On October 5, 2026, the First Circuit remanded this case for decision of whether Plaintiffs' motion for preliminary injunction against Bow's policy, or interim declaratory relief, should be granted. Current circumstances cause Plaintiffs to respectfully move this Court to expedite its decision of this matter.

Since Plaintiff filed their motion in 2024, two complete school years—of fall, winter, and spring sports seasons—have come and gone. This year's fall sports season is about to end, and the winter season will soon begin. During the last two years, Plaintiffs have had to censor themselves when at Bow School District events to ensure that they would not get banned from school property (as they were in September 2024) or experience other negative consequences. That irreparable harm is ongoing.

Preliminary relief is also warranted because additional time and discovery is necessary to resolve Plaintiffs' nominal damages claims based on past viewpoint

discrimination and First Amendment retaliation. Plaintiffs appreciate that this Court faces other demands for its time, but additional delay jeopardizes Plaintiffs' ability to obtain relief. Thus, the upcoming Bow girls' soccer playoffs as well as games in the winter sports season constitute good cause to expedite consideration of the motion.

Pursuant to Local Rule 7.1(f), Plaintiffs respectfully move for this Court to expedite consideration of the motion for preliminary injunction, or in the alternative, interim declaratory relief; and rule on this motion by the first games of the winter sports season, on December 9, 2026. If no ruling occurs by December 9, 2026, Plaintiffs will understand this Court to have constructively denied the injunction, and pursue another interlocutory appeal of that denial under 28 U.S.C § 1292(a)(1), while continuing to litigate the nominal damages and First Amendment retaliation claims before this court.

## Statement of Facts

The facts of this case are well known to the Court. *See, e.g.*, Dkt. 85 at 4-10; Dkt. 60 at 4-11; Dkt. 15 at 7-15. Plaintiffs will only review facts relevant to this motion.

On September 17, 2024, Plaintiffs attended a varsity girls' soccer game at Bow High School, in which their daughters and granddaughter played. *See, e.g.*, Dkt. 85 at 3-4; Dkt. 14-3, ¶¶ 14-15; Dkt. 14-4, ¶¶ 23-24; Dkt. 14-5, ¶ 13. In the second half of the game, three Plaintiffs wore pink wristbands with XX on them, to silently

express their belief that girls' and women's sports should be reserved to biological females. *See* Dkt. 85 at 7-8; Dkt. 14-3, ¶¶ 17, 23-24; Dkt. 14-4, ¶ 28; Dkt. 14-6, ¶¶ 4-9. They did not call attention to the wristbands or disturb the game, and most spectators—let alone, the players—would never have known that a protest was happening if not for the Defendants' own actions. *See* Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 64:9-20, 66:4-13; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 8:23-9:7, 11:13-23; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 8:23-9:7, 11:13-23; Dkt. 14-3, ¶¶ 16, 18; Dkt. 14-4, ¶¶ 27, 29; Dkt. 14-6, ¶¶ 4, 6. Plaintiffs' protest did not harass players or cause any material disruption of the game. Dkt. 85 at 16-19, 28.

During the second half, Bow officials approached Plaintiffs and insisted that this silent protest violated school policies, so Plaintiffs had to either remove the wristbands or leave the game. *See, e.g.*, Dkt. 85 at 8-9; Dkt. 22-1, ¶¶ 12-13; Dkt. 22-6, ¶¶ 7-8. The school allows "inclusionary" messages such as the Pride Flag but not "exclusionary" messages such as Plaintiffs' pink XX wristbands, which Bow officials consider to be a "hateful" "anti-trans symbol." Dkt. 85 at 13-14, 20-21; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 31:10-33:1, 67:13-68:22; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 25:14-15, 31:10-18. The soccer game was stopped for approximately 10-15 minutes while Plaintiffs initially refused to remove the wristbands, and officials threatened to end the game permanently if Plaintiffs did not comply. *See, e.g.*, Dkt. 85 at 8-9; Dkt. 22-1, ¶¶ 14-15, 17; Dkt. 40, ¶ 47; Dkt. 14-4, ¶¶ 35-36; Dkt. 14-6, ¶¶ 10-12.

Plaintiffs eventually gave in and removed the bands. Dkt. 85 at 8-9; Dkt. 14-3, ¶¶ 20-23; Dkt, 14-4, ¶¶ 30-34; Dkt. 14-6, ¶ 13.

A few days later, Plaintiffs Kyle Fellers and Andy Foote received "No Trespass Orders" prohibiting them for a time "from entering the buildings, grounds, and property of the Bow School District" including "parking lots, and athletic fields" and "from attending any Bow School District athletic or extra-curricular event, on or off school grounds." Dkt. 85 at 9-10; Dkt. 14-14; Dkt. 14-13. In the orders and in a public statement, Bow School District Superintendent Marcy Kelley stated that Fellers' and Foote's silent protest violated Bow Policy KFA and the Bow High School Athletics Handbook. Dkt. 14-12; Dkt. 14-14; Dkt. 14-13. Policy KFA requires "mutual respect, civility, and orderly conduct among all individuals on school property or at a school event" and forbids people from "injur[ing], threaten[ing], harass[ing], or intimidat[ing] . . . any other person" or "imped[ing], delay[ing], disrupt[ing], or otherwise interfer[ing] with any school activity or function." Dkt. 14-7. Likewise, the Athletics Handbook states "[p]oor sportsmanship in any form will not be tolerated on the field of play, on the sidelines, or in the stands." Dkt. 14-9.

Bow School District interprets these policies to forbid "any inappropriate signs, references, language or anything else" at school sporting events. Dkt. 14-8; *cf.* Dkt. 85 at 9. The school considers XX wristbands or signs with messages such as "Protect Women's Sports for Female Athletes" as "targeting the school's transgender and

gender nonconforming student population generally for harassment and intimidation, irrespective of whether those students are playing on the field, attending the games as spectators, or present at the games at all." Dkt. 59 at 13. At all events—regardless of whether a transgender athlete is present—attendees must either remove apparel, flags, bumper stickers, and similar symbols expressing a message Bow deems "anti-trans" or leave school grounds. *See* Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 67:13-68:17; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 28:23-30:7, 41:20-42:19. No showing of specific harm to any individual student is necessary. *See* Nov. 21 A.M. Hrg. Tr., Dkt. 67, at 33:6-25, 37:2-10; Dkt. 73 at 18.

Plaintiffs wore, and have testified that they intend to wear again, pink XX wristbands as a silent protest. *See, e.g.*, Nov. 21 A.M. Hrg. Tr., Dkt. 67, at 91:17-92:18; Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 34:14-35:18; 47:1-10; Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 16:20-17:5. Because of Defendants' policies, Plaintiffs were unable to silently protest in defense of girls' and women's sports at sporting events during the 2024-2025 and 2025-2026 school years. *See, e.g.*, Dkt. 79-1, ¶¶ 11-4; Dkt. 79-4, ¶¶ 3-6; Dkt. 79-5, ¶¶ 11-4; Dkt. 14-6, ¶ 2-10; Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 46:9-48:18. During each of the three sports seasons in the 2026-2027 school year, two of the Plaintiffs' children are participating and will participate on Bow High School teams: one on the girls' soccer, girls' basketball, and girls' lacrosse teams and the other on various boys' sports teams. *See* A. Foote 3d. Dec., ¶¶ 1-5; N. Foote 3d. Dec.,

¶¶ 1-3; Fellers 3d. Dec., ¶ 5, 9. Plaintiffs want to silently protest at specific girls' sporting events in the fall, winter, and spring seasons, including during the girls' soccer playoffs in early November and at the December 9, 2026, girls' basketball game (the opening home game of the season). *See* A. Foote 3d. Dec., ¶¶ 6-8, Ex. T; N. Foote 3d. Dec., ¶¶ 4-5; Fellers 3d. Dec., ¶¶ 6-8, 11.

Plaintiffs expect that without judicial relief, any public protests at games during the 2026-2027 school year will violate Defendants' policies and put Plaintiffs in danger of exclusion, game suspension, game cancellation, or renewed No Trespass orders. *See, e.g.*, A. Foote 3d. Dec., ¶¶ 9-10; N. Foote 3d. Dec., ¶¶ 6-7; Fellers 3d. Dec., ¶¶ 12-13. As a result, they are self-censoring until they can obtain legal relief, which has so far not been obtained. A. Foote 3d. Dec., ¶¶ 10; N. Foote 3d. Dec., ¶ 7; Fellers 3d. Dec., ¶ 12.

## PROCEDURAL HISTORY

On September 30, 2024, Plaintiffs filed this lawsuit in defense of their First Amendment rights. Dkt. 1. At a hearing on October 8, this Court denied Plaintiffs' motion for a temporary restraining order against Defendants' policies restricting protests on school grounds but ordered Defendants to allow Fellers to attend soccer games if he did not protest at games, advocate his position at games, interact with coaches, or violate school rules or sportsmanship expectations. Oct. 8 Hrg. Tr., Dkt. 24, at 78:2-79:5.

After a two-day evidentiary hearing on November 21-22, 2024, Plaintiffs renewed their request for a temporary restraining order, to allow Plaintiffs to wear wristbands at Bow School District events, pending the Court's ruling on the longer-term preliminary relief. Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 37:22-38:3. Plaintiffs testified about winter season sporting events during December 2024 and January 2025 at which they planned to silently protest if granted protection from the Court. *See, e.g.*, Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 38:12-19; Nov. 21 P.M. Hrg. Tr., Dkt. 65, at 34:7-25, 46:3-48:18. The Court denied this renewed request for a temporary restraining order. Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 44:24-45:2. On April 14, 2025, this Court also denied Plaintiffs' motion for a preliminary injunction. Dkt. 80. Plaintiffs timely appealed. *See* Dkt. 82.

On appeal, the First Circuit reversed this Court, holding that "Appellants have shown a reasonable likelihood of success as to the merits of their viewpoint discrimination claim" and thus had shown "one prong, albeit the most important, of a four-prong [preliminary injunction] analysis." Dkt. 85 at 4, 22. The Circuit made no ruling respecting the other three prongs of the analysis, instead remanding for this Court to assess those prongs in the first instance. *See id.* at 22-23. The Circuit stated that this Court should examine "whether appellants have made the showing necessary for some form of relief," either "preliminary injunctive relief" or "lesser

interim relief, such as a declaratory judgment." *Id.* Plaintiffs now request that this Court do so on an expedited basis.

## ARGUMENT

### I. THE IMPENDING SOCCER PLAYOFFS AND WINTER SPORTS SEASON CONSTITUTE GOOD CAUSE TO EXPEDITE CONSIDERATION OF PLAINTIFFS' MOTION, FILED OVER TWO YEARS AGO

Federal law requires that "the court shall expedite the consideration of . . . any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown." 28 U.S.C. § 1657(a). Moreover, "'good cause' is shown if a right under the Constitution of the United States . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Id*. The First Circuit has "stressed the need for expedition that characterizes an injunctive proceeding." *United States v. 8,440,190.00 in U.S. Currency*, 719 F.3d 49, 65 n.17 (1st Cir. 2013) (cleaned up). Thus, the District of New Hampshire permits parties to request expedited consideration for good cause via motion. Local Rule 7.1(f).

Moreover, when a "court's action ha[s] the practical effect of denying injunctive relief" and "cause[s] serious (if not irreparable) harm," movants can have a "right to an immediate appeal" under 28 U.S.C § 1292(a)(1). *Watchtower Bible & Tract Soc'y of N.Y. v. Colombani*, 712 F.3d 6, 12 (1st Cir. 2013). Courts have repeatedly allowed such appeals when delay causes irreparable harm. *See, e.g.*, *In re Fort Worth*

*Chamber of Commerce*, 100 F.4th 528, 532-33 (5th Cir. 2024) (permitting appeal after party "informed the court that if it did not receive a ruling by" a certain deadline, "it would understand its preliminary injunction to be effectively denied"); *Clarke v. CFTC*, 74 F.4th 627, 635 (5th Cir. 2023) (permitting appeal when court did not rule despite motion "to expedite its consideration in light of the looming deadline"); *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, 538 F.3d 577, 580 (7th Cir. 2008) (noting that "a delay of a ruling [is] equivalent to a denial . . . when the passage of time causes irreparable injury to the person claiming entitlement to relief"); *Mount Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1449 (9th Cir. 1992) (finding effective denial when court delaying ruling until action to be enjoined was substantially complete).

Plaintiffs filed their motion for preliminary injunction over two years ago. *See* Dkt. 14. During that entire time—six consecutive sports seasons—they have been unable to silently protest at Bow sporting events. Even before this Court originally denied Plaintiffs' motion, it already had twice denied Plaintiffs' request for a temporary restraining order to allow their silent protests, while the motion was pending. *See* Dkt. 80; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 37:8-19, 46:12-18; Oct. 8 Hrg. Tr., Dkt. 24, at 74:9-12, 76:11-12. Plaintiffs respectfully urge this Court to allow them to exercise their First Amendment rights during the coming winter sports season. Continued delay is effectively a denial of their right to speak.

## II. DEFENDANTS IRREPARABLY DAMAGE PLAINTIFFS WHEN THEY BAR NON-DISRUPTIVE SILENT PROTESTS AT SPORTING EVENTS OPEN TO THE PUBLIC

The First Circuit has already ruled that Plaintiffs have demonstrated a likelihood of success on the merits of their viewpoint discrimination claim: "the most important" of the four prongs of preliminary injunction analysis. Dkt. 85 at 4, 22. Moreover, "[w]hen the Government is the opposing party," courts "merge" "balancing of the equities and analysis of the public interest together." *Doe v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021) (cleaned up). As a result, in practice, only two prongs remain undecided: irreparable harm and public interest.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 19 (2020) (citation omitted). "A burden on protected speech always causes some degree of irreparable harm." *Bl(a)ck Tea Soc'y v. City of Bos.*, 378 F.3d 8, 15 (1st Cir. 2004). "[E]ach day in which Plaintiffs were prohibited from expressing constitutionally protected speech constitutes a separate irreparable harm." *Ass'n of Victims of Med. Malpractice v. Torres-Nieves*, No. 12-1812(DRD), 2013 U.S. Dist. LEXIS 205407, at *24 (D.P.R. Sep. 30, 2013).

Injunctive relief is required to address the irreparable injury that Plaintiffs presently suffer. Although New Hampshire's law on transgender athletics is now in effect, *see* Dkt. 85 at 4-5, 23, that does not moot Plaintiffs' case or their entitlement to injunctive relief. "The burden of establishing mootness rests with the party

urging dismissal." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 88 (2008). "This burden is a heavy one." *Id.* It requires proving that it is "impossible for the [court] to provide effective relief." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 48 (1st Cir. 2006). For an injunction, that means asking whether "intervening events have eliminated any reasonable anticipation that the aggrieved party will, in the future, be faced with a recurrence of the alleged harm." *Id.* at 49.

Defendants have testified that their policies prohibit Plaintiffs from silently expressing their message because it is "hateful" and "trans-exclusionary" and would be enforced at upcoming district events, regardless of whether a transgender player was competing or in the audience. *See* Nov. 22 A.M. Hrg. Tr., Dkt. 66, at 67:13-68:17; Nov. 22 P.M. Hrg. Tr., Dkt. 72, at 28:23-30:7, 41:20-42:19. The ban on XX wristbands applies "irrespective of whether [transgender] students are playing on the field, attending the games as spectators, or present at the games at all." Dkt. 59 at 13.

Defendants have not repealed their policies or practices about this, and thus still bar Plaintiffs from silently protesting at any Bow School District sporting events and other extracurricular activities—even though HB-1205, requiring public school

student-athletes in grades 5–12 to compete on teams matching the sex listed on their birth certificates, has been allowed to go into effect.[1]

Plaintiffs have been prevented from silently protesting at Bow School District extracurricular events during six consecutive sports seasons so far. Every day that passes magnifies Plaintiffs' injury. Plaintiffs have testified about silent protests on the sidelines, in the parking lot, and elsewhere that they would make over the next year and in future years, if permitted, such as wearing pink wristbands, distributing wristbands, and holding signs at specific future girls' sporting events. A. Foote 3d. Dec., ¶¶ 6-10; N. Foote 3d. Dec., ¶¶ 4-7; Fellers 3d. Dec., ¶¶ 3-11. Unless they receive injunctive relief from this Court, they will not be able to express their viewpoint during this school year's soccer playoffs or winter and spring sports seasons. *See* A. Foote 3d. Dec., ¶¶ 4-10; N. Foote 3d. Dec., ¶¶ 4-7; Fellers 3d. Dec., ¶¶ 12-13.

## III. ALLOWING ADULTS TO FREELY EXPRESS SOCIOPOLITICAL VIEWS ALWAYS PROMOTES THE PUBLIC INTEREST

"First Amendment rights are not private rights . . . so much as they are rights of the general public." *Westfield High Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98, 128 (D. Mass. 2003) (citation omitted). "[T]he suppression of political

[1] Plaintiffs' claims for injunctive and declaratory relief are not moot, and Plaintiffs also have non-moot claims for nominal damages for past viewpoint discrimination and retaliation, including claims against the school district that are not subject to qualified immunity or any other personal defenses.

speech harms not only the speaker, but also the public to whom the speech would be directed." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012). Suppression "depriv[es] the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration." *Id.* (cleaned up).

Unless this Court grants injunctive relief, Defendants thus will continue to deprive the public of its right to receive and evaluate Plaintiffs' political and social views on fair and safe competition in girls' and women's sports. Permitting Plaintiffs' non-disruptive speech will not prevent Bow School District from running public schools, hosting athletic events, or performing any legitimate government function. Defendants can continue to enforce reasonable and viewpoint-neutral time, place, and manner restrictions at extracurricular events, to ensure no disruption of school activities. Defendants suffer no valid harm from a preliminary injunction, because they have no legitimate government interest in suppressing the public's right to deliberate in a free, non-disruptive, and informed manner about matters of public concern.

## IV. If this Court does not grant injunctive relief, it should declare that Defendants' policy violates the First Amendment

This Court should enter a preliminary injunction protecting Plaintiffs' right to silently protest at Bow sporting events, because Plaintiffs have established irreparable harm, that the balance of equities tips in their favor, and that an injunction is in the public interest.

However, an interim declaratory judgment stating that it is unconstitutional for Defendants to ban silent protests at sporting events would also provide most of the necessary protection for Plaintiffs' speech. *Cf. Stanton v. S. Berkshire Reg'l Sch. Dist.*, 197 F.3d 574, 576-77 (1st Cir. 1999) (describing an "interim declaratory ruling by the district court" which "declar[ed] the existing scheme unconstitutional"). Declaratory judgments can supply both retrospective and prospective relief, because they can both affect the relationship of parties in the future and serve as a binding determination resolving a live legal controversy about liability for a past injury. *See, e.g.*, *Cotto v. Campbell*, 126 F.4th 761, 772 (1st Cir. 2025); *Donahue v. City of Bos.*, 304 F.3d 110, 116 (1st Cir. 2002); *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, n.2 (10th Cir. 2002). A "claim for a declaration . . . is not moot" when parties dispute liability and the claim "ask[s] the court to determine whether a past constitutional violation occurred." *F.E.R. v. Valdez*, 58 F.3d 1530, 1533 (10th Cir. 1995); *see also McBreairty v. Brewer Sch. Dep't*, 783 F. Supp. 3d 394, 415 (D. Me. 2025). Declaratory judgments often have "much the same practical effect as an injunction," even though they are not enforced through contempt. *Scaer v. City of Nashua*, 162 F.4th 256, 267 (1st Cir. 2025).

Plaintiffs, however, are in a significantly different situation from the plaintiffs in *Scaer* because it was undisputed in the *Scaer* case that the government had already repealed the policy at issue. *See id.* at 261. Bow has not repealed its policy.

Additionally, the plaintiffs in *Scaer* did not face any threat of physical removal or other sanctions due to the challenged government policy, *see* 62 F.4th at 259, 261—unlike Plaintiffs here who have already been trespassed for violating Bow's ban on silent protests, *see* Dkt. 85 at 9-10.

As a result, a preliminary injunction is the more appropriate form of relief here. Plaintiffs respectfully request that this Court enter a preliminary injunction, or an interim declaratory judgment in the alternative if for some reason an injunction cannot issue. This would protect Plaintiffs' right to speak, while they pursue discovery regarding their First Amendment retaliation claims and also seek partial or full summary judgment on their claims for nominal damages.

## CONCLUSION

This Court should expedite its consideration of Plaintiffs' pending motion for a preliminary injunction or interim declaratory relief as soon as possible and rule on that motion by December 9, 2026, if not sooner.

Dated: October 19, 2026

Respectfully submitted,

*/s/ Richard J. Lehmann*
Richard J. Lehmann
New Hampshire Bar No. 9339
LEHMANN MAJOR LIST PLLC
6 Garvins Falls Road
Concord, New Hampshire 03301
Tel: (603) 731-5435
Fax: (720) 995-9156
rick@nhlawyer.com

/s/ *Endel Kolde*
Endel Kolde*
DC Bar No. 1782129
Brett Nolan*
DC Bar No. 90014964
Nathan J. Ristuccia*[2]
Virginia Bar No. 98372
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW
Suite 801
Washington, D.C. 20036
Tel: (202) 301-3300
Fax: (202) 301-3399
dkolde@ifs.org
bnolan@ifs.org
nristuccia@ifs.org

**Pro hac vice*

*Counsel for Plaintiff*

[2] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

## CERTIFICATE OF CONFERRAL

I hereby certify that, on October 19, Plaintiffs' counsel conferred in good faith with Defendants' counsel by telephone and were not able to come an agreement on interim relief or this motion.

Executed under penalty of perjury.

Dated: October 19, 2026

*s/Endel Kolde*